## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                           Case No. 24-cr-7 (JMB/DLM)

                Plaintiff,

v.                                                  **ORDER AND**
                                                    **REPORT AND**
David Vincent Erickson,                             **RECOMMENDATION**

                Defendant.

This matter is before the Court on Defendant David Erickson's Motion for Bill of Particulars; Motion for Discovery; Motion to Dismiss Count 16; Motion to Dismiss for Preindictment Delay; Motion to Suppress Pole Camera Footage; Motion to Dismiss for Multiplicity and Duplicity; Motion to Suppress Email Evidence; and Motion to Dismiss for Charging in Violation of Statute of Limitations. (Docs. 42-49.) The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

The parties agreed to stipulate to certain evidence, cancel the January 29, 2025 motions hearing, and have the Court decide the motions on the parties' written submissions. (Doc. 58.) For the reasons explained below the Court denies Mr. Erickson's Motion for Bill of Particulars (Doc. 42) and Motion for Discovery (Doc. 43). The Court recommends that Mr. Erickson's Motion to Dismiss Count 16 (Doc. 44); Motion to Dismiss for Preindictment Delay (Doc. 45); Motion to Suppress Pole Camera Footage (Doc. 46); Motion to Dismiss for Multiplicity and Duplicity (Doc. 47); Motion to Suppress Email

Evidence (Doc. 48); and Motion to Dismiss for Charging in Violation of Statute of Limitations (Doc. 49) be denied.

## BACKGROUND

On January 18, 2024, Mr. Erickson was charged by 16-count indictment with five counts of tax evasion in violation of 26 U.S.C. § 7201 (Counts 1-5); ten counts of aiding the preparation of a false return in violation of 26 U.S.C. § 7206(2) (Counts 6-15); and one count of making a false statement in violation of 18 U.S.C. § 1001 (Count 16). (*See generally* Doc. 1.) The government alleges that Mr. Erickson beneficially owned and controlled several foreign companies which he used to defraud the United States out of $1.8 million in tax revenue by knowingly disguising taxable income as nontaxable loans and thus underreporting his taxable income.

On February 20, 2020, during the investigation into Mr. Erickson's activities, law enforcement sought and obtained a federal warrant to search his email, dave@halsteadbayholdings.com. (*See generally* Def. Ex. A, *found at* Doc. 48 at 5-58.) In support of probable cause for the warrant, the affidavit explains basic taxation principles including the rule that United States citizens must report all income from all sources, foreign or domestic, and the rule of pass-through taxation applicable to "S Corporations" like Halstead Bay Holdings ("HBH"), Mr. Erickson's Nevada corporation. (*Id.* ¶¶ 12, 28.) The affidavit also summarizes information from interviews of, and records produced by, an Informant; tax returns filed by Mr. Erickson and HBH; subpoenaed bank records for accounts in HBH's name; and interviews with Mr. Erickson and tax professionals who worked for him. (*Id*. ¶¶ 14-26.)

The affidavit describes the Informant as a "Canadian citizen . . . who had worked for several Toronto-based companies beneficially owned by [Mr.] Erickson from 2009 through 2013." (*Id.* ¶ 14.) The affidavit then summarizes the Informant's statements from a November 2016 interview which establishes that Mr. Erickson controlled and benefitted from various, high grossing businesses including Rypl; that he "installed nominees to create the appearance that persons other than [him] 'own[ed]' and manage[d]" those businesses; and he used HBH to receive taxable payments from those business by routing revenue through bank accounts in Canada and Curacao before being disbursed to accounts Mr. Erickson controlled in the United States at his discretion for personal expenses. (*Id.* ¶¶ 16-26.)

Next, the affidavit explains how Mr. Erickson "materially underreported his gross income" by approximately $5.74 million from 2012 to 2018. (*Id.* ¶ 32.) The affiant reviewed HBH bank records from Wells Fargo Bank to corroborate the Informant's allegations that Mr. Erickson had "been receiving substantial income through Halstead" from Canadian and Curacao-based banks. (*Id.* ¶ 29.) The Wells Fargo bank records showed approximately $11.86 million in deposits from 2012 to 2018, which was greater than the income reported on Mr. Erickson's and HBH's tax returns for those same years. (*Id.* ¶¶ 30-32.) The affidavit then explains that Mr. Erickson provided contradictory statements about "loans" that HBH reported on its tax returns during an August 2019 interview. (*Id.* ¶ 33.) The affidavit also explains that between August and September 2019, the affiant interviewed three witnesses who provided tax-return preparation and bookkeeping services to Mr. Erickson and HBH, explaining that Mr. Erickson dictated how expenses should be

reported on his tax returns and never provided any loan documentation. (*Id*. ¶¶ 34-36.) One of the return preparers also explained to the affiant that he "was not comfortable with [Mr.] Erickson's accounting related to the [loans from Firefly and Rypl]." (*Id*. ¶ 34.) The affiant also stated that he reviewed HBH's bank records spanning several years and noted that he observed no evidence of loan repayment. (*Id.* ¶ 33.)

The affidavit also explains that the Informant provided the affiant with emails Mr. Erickson sent and received from December 2009 to April 2013, which reflected Mr. Erickson's "authority and control over various foreign entities" and "how [Mr.] Erickson receives his income," and corroborated the information the Informant provided to the affiant. (*Id.* ¶ 38-41.) The affidavit then explains that "[a]lthough the emails provided by the Informant end in early 2013 . . . the investigation to date indicates that [Mr.] Erickson continues to use this account dave@halsteadbayholdings.com in connection with his business dealings." (*Id*. ¶ 43.) The affidavit then describes records provided by Mr. Erickson's tax preparers that show Mr. Erickson used that email address to communicate from 2010 to at least 2019. (*Id*.)

## ANALYSIS

## I.    MR. ERICKSON'S MOTION FOR BILL OF PARTICULARS IS DENIED.

The Court turns first to Mr. Erickson's Motion for Bill of Particulars (Doc. 42). Mr. Erickson asks the Court to order the government to "specify which . . . acts, not presently listed in the indictment, the [g]overnment will allege at trial" and why Mr. Erickson's statements to IRS revenue agents were lies. (*Id*. at 1.) The government has declined to

provide a bill of particulars to Mr. Erickson and argues that "the indictment adequately informs him of the charges against him[.]" (Doc. 50 at 37.)

"The purpose of a bill of particulars is to inform the defendant of the nature of a charge with sufficient precision to enable him to prepare for trial and to avoid or minimize the danger of surprise at trial." *United States v. Lundstrom*, No. 14-cr-3136, 2015 WL 4249451, at *2 (D. Neb. July 13, 2015) (citing *United States v. Livingstone*, 576 F.3d 881, 883 (8th Cir. 2009)) (cleaned up), *R. & R. adopted*, 2015 WL 5881898 (D. Neb. Oct. 7, 2015), *aff'd*, 880 F.3d 423 (8th Cir. 2018). A bill of particulars may be required when the indictment is vague on its face or contains conclusory allegations that fail to provide the accused with sufficient notice of the crimes with which he is charged. *Id.* But a bill of particulars is "not a discovery device to be used to require the government to provide a detailed disclosure of the evidence that it will present at trial." *Id.* (quoting *Livingstone*, 576 F.3d at 883) (cleaned up).

The Court denies Mr. Erickson's motion because the indictment adequately informs him of the charges against him. The 29-page indictment lays out a detailed description the tax evasion scheme alleged in Counts 1-15, and explains why the government alleges that Mr. Erickson's statements to Internal Revenue Service ("IRS") agents were lies, as alleged in Count 16. The government also represents that it provided Mr. Erickson "[e]xtensive discovery . . . [and] presented a two-hour reverse proffer on May 15, 2024 . . . citing specific evidence by discovery production Bates stamp, providing a candid explanation of its theory of the case, and offering to answer specific questions about the evidence." (Doc. 50 at 40.) The government has provided Mr. Erickson with sufficient notice to enable him to

"understand the nature of the charges against him, prepare a defense, and avoid any surprise." *United States v. Milk*, 66 F.4th 1121, 1133 (8th Cir. 2023) (quoting *United States v. Shepard*, 462 F.3d 847, 860 (8th Cir. 2006)). Accordingly, the Court denies Mr. Erickson's Motion for Bill of Particulars (Doc. 42).

## II. MR. ERICKSON'S MOTION FOR DISCOVERY IS DENIED.

The Court turns next to Mr. Erickson's Motion for Discovery (Doc. 43). Mr. Erickson's motion contains seven requests:

1) All notes taken by Special Agents Kiser and Turner during their August 2019 interview of David Erickson.

2) All notes taken by government agents during interviews with other material witnesses, including Tom O'Connell, Justin Sundberg, Vicki Narveson, Johnny Chang, and Greg Elias.

3) All IRS Memoranda of activity concerning David Erickson's investigation which have not already been disclosed.

4) All transcripts of grand jury testimony in grand jury proceedings involving David Erickson which have not already been disclosed.

5) All video footage taken of Erickson's home or office, as well as software that allows Erickson's counsel to review this footage.

6) Any and all other footage of attempts to surreptitiously record David Erickson.

7) Any arrest or body-worn camera footage relating to David Erickson.

(Doc. 43 at 2.) Mr. Erickson represents to the Court in his Reply to the government's Response that requests 1, 2, 5, 6, and 7 have been withdrawn. (Doc. 51 at 1, 11.) Accordingly, those requests are denied as moot.

Requests 3 and 4, are also denied. Request 3 seeks IRS memoranda concerning the investigation of Mr. Erickson. The government opposes this request arguing that such memoranda are not discoverable under Federal Rule of Criminal Procedure 16 or *Brady*[1] and its progeny. Federal Rule of Criminal Procedure 16(a)(2) exempts such memoranda from discovery. Fed. R. Crim. P. 16(a)(2) ("[T]his rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case.") To the extent that Mr. Erickson seeks such disclosure under *Brady* and its progeny, the government represents that it has "complied with its obligations under Rule 16, *Brady*, and *Giglio*[2] and will continue to do so." (Doc. 50 at 7.)

Request 4 seeks "all transcripts of grand jury testimony in grand jury proceedings involving David Erickson which have not already been disclosed." (Doc. 43 at 2.) The government also opposes this request. The government represents that "[t]he only undisclosed transcript concerns summary testimony given by the IRS-CI ["Internal Revenue Service – Criminal Investigation")] special agent who investigated this case." (Doc. 50 at 7.) The government argues that if Mr. Erickson asks the Court to order the production of this transcript it should be denied because it is not discoverable under Fed. R. Crim. P. 16, and Mr. Erickson has not established a particularized need for the transcript under Fed. R. Crim. P. 6(e). But the government represents that if it calls the IRS-CI special agent as a witness at trial, it will disclose the transcript under the Jencks Act, 18 U.C.S. §

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).
[2] *Giglio v. United States*, 405 U.S. 150 (1972).

3500. Additionally, even if the government does not call the IRS-CI special agent at trial, if the transcript favors Mr. Erickson, its disclosure is required under *Brady* and its progeny. Mr. Erickson therefore will have access to the transcript one way or another before trial. As a result, Requests 3 and 4 are denied and Mr. Erickson's Motion for Discovery (Doc. 43) is denied in its entirety.

## III.    MR. ERICKSON'S MOTION TO DISMISS COUNT 16 SHOULD BE DENIED.

The Court turns next to Mr. Erickson's Motion to Dismiss Count 16 (Doc. 44). In his motion, Mr. Erickson seeks the dismissal of Count 16, making a false statement to IRS-CI, in violation of 18 U.S.C. § 1001. (Doc. 1 at 28-29.) Mr. Erickson argues that the count fails to sufficiently allege that he made false statements to IRS agents because, from his perspective, the statements were technically true. The government opposes the motion, and argues that whether Mr. Erickson's statements were technically true "is a factual dispute that only a jury can resolve[,]" and thus his motion should be denied. (Doc. 50 at 23.)

The Court agrees with the government. Under Federal Rule of Criminal Procedure 7(c), an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). And Fed. R. Crim. P. 12(b) only authorizes dismissal where the allegations in the indictment are insufficient to charge an offense. Thus, an indictment will survive a motion to dismiss when it "allege[s] that the defendant performed acts which, if proven, constitute the violation of law for which he is charged." *United States v. Polychron*, 841 F.2d 833, 834 (8th Cir. 1988). An

8

indictment that "tracks the statutory language" will generally suffice. *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008).

Count 16 sufficiently alleges an offense. To establish a violation of the "false statement portion of § 1001," the government must prove these elements beyond a reasonable doubt: "(1) the defendant made a statement; (2) the statement was false, fictitious or fraudulent as the defendant knew; (3) the defendant made the statement knowingly and willfully; (4) the statement was within the jurisdiction of a federal agency; and (5) the statement was material." *United States v. Johnson*, 937 F.2d 392, 396 (8th Cir. 1991) (citing *United States v. Hicks,* 619 F.2d 752, 754 (8th Cir. 1980)) (further citation omitted). Count 16 tracks these elements and describes the factual allegations that support them. (Doc. 1 ¶¶ 83-84.) It alleges that Mr. Erickson "did willfully and knowingly make and cause to be made materially false, fictious, and fraudulent statements and representations in a matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States" by "falsely stating to an IRS Criminal Investigation Special Agent" that he "had never directed someone at Firefly Lane Ltd., Firefly Lane Corporation, and Rypl where to transfer funds on behalf of these companies and, second, by stating that he had no discretion to direct" those companies "to loan funds to HBH." (*Id.* ¶ 84.) Count 16 also alleges that "these statements and representations were false because, as [Mr. Erickson] then and there knew, he had caused and directed several transactions whereby" those companies "transferred funds to bank accounts held by HBH and controlled by [Mr. Erickson] in amounts determined by [Mr. Erickson]." (*Id.*)

Mr. Erickson contends that Count 16 fails to allege an offense because his statement to the IRS-CI agent was technically true—he claims that he "was never a majority shareholder or controlling shareholder of any of these companies." (Doc. 44 at 5.) Thus, in Mr. Erickson's estimation, "he never had the legal authority or discretion to direct the three named corporations . . . to loan money, nor did he have the legal authority or discretion to instruct any of the three listed companies where to draw funds for their loans from." (*Id.*) The government asserts that it "intends to present evidence at trial that [Mr.] Erickson repeatedly told company employees where to transfer funds on the companies' behalf" and "that he wielded significant discretion that allowed him to do so." (Doc. 50 at 27.)

Mr. Erickson relies on several cases in which a defendant prevailed in a § 1001 prosecution to support his argument that "prosecution for a false statement under § 1001 or under the perjury statutes cannot be based on an ambiguous question where the response may be literally and factually correct." (Doc. 44 at 4 (quoting *United States v. Vesaas*, 586 F.2d 101, 104 (8th Cir. 1978)); *see also United States v. Moses*, 94 F.3d 182, 188 (5th Cir. 1996) ("we cannot uphold a conviction, however, where the alleged statement forming the basis of a violation of section 1001 is true on its face"); *United States v. Castro*, 704 F.3d 125, 139 (3d Cir. 2013) ("Accordingly, when a statement is literally true, it is, by definition, not false and cannot be treated as such under a perjury-type statute, no matter what the defendant's subjective state of mind might have been.")). But Mr. Erickson's reliance on these cases is misplaced as each involved post-conviction challenges based on insufficiency of the evidence. *See Vesaas,* 586 F.2d at 102 ("There exists on the record a total insufficiency of proof to sustain the conviction."); *Moses*, 94 F.3d at 189 ("Because

Moses's response was not false on its face, the evidence was insufficient to support the conviction."); *Castro*, 704 F.3d at 139 ("[The record] is devoid of evidence that Castro made a false statement."). However, when a court such as this one reviews a pretrial "12(b) motion to dismiss the indictment, the [c]ourt does not entertain an evidentiary inquiry, but rather accepts the allegations of the [i]ndictment as true." *United States v. Augustine Med., Inc.,* No. 03-cr-3211 (ADM/AJB), 2004 WL 256772, at *2 (D. Minn. Feb. 10, 2004) (citing *United States v. Ferro,* 252 F.3d 964, 968 (8th Cir. 2001)).

Mr. Erickson's motion essentially asks this Court to entertain an evidentiary inquiry to decide whether his statements to the IRS-CI special agents were literally true, as he suggests, or false, as the government alleges. Because the question of the truth or falsity of Mr. Erickson's statements to the IRS-CI special agent is a question of fact for a jury, the Court recommends that Mr. Erickson's Motion to Dismiss Count 16 (Doc. 44) be denied.

## IV.    MR. ERICKSON'S MOTION TO DISMISS FOR PREINDICTMENT DELAY SHOULD BE DENIED.

The Court turns now to Mr. Erickson's Motion to Dismiss for Preindictment Delay (Doc. 45). Mr. Erickson moves the Court to dismiss the entire indictment because, in his estimation, the government's 10-year delay in bringing the indictment has prejudiced him and "goes beyond any conceivable investigatory justification." (Doc. 45 at 4-7.) The government opposes Mr. Erickson's motion arguing that he "has not shown actual and substantial prejudice," and the "government did not intentionally delay the indictment to gain a tactical advantage or to harass" him. (Doc. 50 at 32, 36.)

## A.    Mr. Erickson has failed to establish actual and substantial prejudice attributable to any government delay.

"The Due Process Clause of the Fifth Amendment requires that an indictment be dismissed if (1) pre-indictment delay substantially prejudices a defendant's right to a fair trial and (2) the delay was an intentional device used by the government to gain tactical advantage over the accused." *United States v. Schlegel*, No. 13-cr-0074 (PJS/FLN), 2013 WL 4781018, at *3 (D. Minn. Sept. 5, 2013), *aff'd sub nom. Schlegel v. Holder*, 593 F. App'x 599 (8th Cir. 2015) (citing *United States v. Lovasco,* 431 U.S. 783, 795 (1977)) (further citation omitted).

Ordinarily, courts consider the actual and substantial prejudice prong first. *United States v. Brockman*, 183 F.3d 891, 895 (8th Cir. 1999). It is a defendant's burden to "prove actual and substantial prejudice attributable to pre-indictment delay" by "specifically identify[ing] witnesses or documents lost during delay properly attributable to the government." *Id*. Conclusory claims of possible prejudice because of the passage of time are not enough. *Id*. (citing *United States v. Bartlett,* 794 F.2d 1285, 1289-90 (8th Cir. 1986)). Rather, a defendant must describe "the substance of the testimony which would be offered by the missing witnesses or the information contained in lost documents in sufficient detail to permit a court to assess accurately whether the information is material to the accused's defense." *Id.* (quoting *Bartlett*, 794 F.2d at 1290). Finally, a defendant must "show that the lost testimony or information is not available through another source." *Id*.

Mr. Erickson has established no actual and substantial prejudice. Mr. Erickson relies on *United States v. Barket* to prove his point. In *Barket*, Mr. Barket was charged in a two-

count indictment that centered on a "single transaction involving an unsecured loan of $30,000 . . . that was ultimately repaid in full with interest[.]" 530 F.2d 189, 191 (8th Cir. 1976). Around the time the loan was repaid, the United States Treasury Department discovered the loan note and referred the matter to the Department of Justice ("DOJ"), Criminal Division for prosecution. *Id*. A year later, the Justice Department declined to prosecute Mr. Barket and closed the case, but did not report the referral, declination, or closing of Mr. Barket's case to the local United States Attorney. *Id.* at 192. Two years after the DOJ declined to prosecute Mr. Barket, the United States Attorney of the local district discovered the same loan during an unrelated investigation and requested permission to charge Mr. Barket. *Id.* The Justice Department granted permission to prosecute Mr. Barket, but "did not consider the request as a question of whether new evidence or other factors justified reopening the two year old closed case." *Id.*

The Eighth Circuit concluded that Mr. Barket's case "present[ed] a unique showing of prejudice sufficient in the circumstances to require dismissal of the indictment." *Id*. at 193. The court based its finding of prejudice on the 47-month delay in prosecution; the deaths of six witnesses whom Mr. Barket claimed "would have materially aided his defense"; and many of the still-living witnesses had "extreme and understandable difficulty remembering relevant facts." *Id*. The court held that the district court did not clearly err when it found that the 47-month delay caused "substantial prejudice to [Mr.] Barket's defense" and "correctly held that because of the [g]overnment's culpable negligence in failing to inform the local United States Attorney of its decision not to prosecute more than

13

two years before approving the instant indictment, the delay was unreasonable" and therefore warranted dismissal. *Id*. at 196-197.

But where Mr. Barket successfully established actual and substantial prejudice, Mr. Erickson has failed to do so. Unlike *Barket*, which involved the deaths of six material witnesses, Mr. Erickson has noted the death of one witness—the whistleblower who set this case in motion. But Mr. Erickson makes no claim that this witness would have materially aided his defense. Indeed, it seems far more logical that whistleblower's death hurts the government's case, not Mr. Erickson's. Moreover, Mr. Erickson claims that the remaining witnesses "are likely to have 'extreme and understandable difficulty remembering relevant facts,'" but he has failed to show that their allegedly lost testimony is unavailable through other sources. (Doc. 45 at 5.) Nor has Mr. Erickson demonstrated that this testimony is material to his defense. As a result, the Court finds that Mr. Erickson has failed to establish actual and substantial prejudice attributable to the government's delay.

**B.      Mr. Erickson has failed to show the delay was an intentional device used by the government to gain tactical advantage over him.**

Because Mr. Erickson has failed to establish actual and substantial prejudice, the Court need not decide whether the government intentionally delayed prosecution to gain a tactical advantage over him. *United States v. Jakisa*, No. 14-cr-119 (SRN/SER), 2015 WL 1810259, at *13 (D. Minn. Apr. 21, 2015) (citing *United States v. Sprouts*, 282 F.3d 1037, 1041 (8th Cir. 2002) ("If the defendant fails to establish actual prejudice, we need not assess the government's rationale for the delay.")) But even if Mr. Erickson had met his

14

burden to establish prejudice, he has failed to show that the government's delay was intentional to gain a tactical advantage. Mr. Erickson argues that the government's delay "goes beyond any conceivable investigatory justification, especially since it appears the Government had all the pieces of this particular case well in hand by 2019 or 2020" (Doc. 45 at 7), but he articulates no tactical advantage the government may have gained by delaying prosecution. Rather, the government represents to the Court, and the record supports, that it conducted a years-long investigation into Mr. Erickson's activities, brought its evidence to Mr. Erickson, and then sought other evidence before filing the indictment.

Accordingly, the Court recommends that Mr. Erickson's Motion to Dismiss for Preindictment Delay (Doc. 45) be denied.

## V. MR. ERICKSON'S MOTION TO DISMISS FOR MULTIPLICITY AND DUPLICITY SHOULD BE DENIED.

Next, the Court addresses Mr. Erickson's Motion to Dismiss for Multiplicity and Duplicity (Doc. 47). Mr. Erickson moves the Court to dismiss "several counts of his indictment for multiplicity and duplicity[.]" (*Id*. at 1.) He argues that Counts 1-5 "are multiplicitous with respect to Counts 6-16" because "the same offense is alleged in Counts 1-5 as is alleged in Counts 6-16." (*Id*.) He also argues that Counts 1-5 are duplicitous because "each one alleges multiple offenses aggregated into one alleged offense" and "[e]ach of the overt acts alleged in [Counts 1-5] could constitute its own, completely separate, violation of 26 USC § 7201." (*Id*. at 1, 9.) The government disagrees and contends that the indictment is neither multiplicitous nor duplicitous.

### A. The Indictment is not multiplicitous.

"An indictment is multiplicitous if it charges the same crime in two counts." *United States v. Chipps*, 410 F.3d 438, 447 (8th Cir. 2005). "Offenses are separate and, therefore, not multiplicitous, if each offense requires proof of an element not required by the other." *United States v. Najarian*, 915 F. Supp. 1460, 1477 (D. Minn. 1996) (citing *Blockburger v. United States,* 284 U.S. 299, 304 (1932)).

Counts 1-5 charge Mr. Erickson with tax evasion in violation of 26 U.S.C. § 7201. (Doc. 1 ¶¶ 67-76.) Counts 6-15 charge Mr. Erickson with aiding and assisting in the preparation of materially false individual tax returns for the tax years 2014-2018, in violation of 26 U.S.C. § 7206(2). (*Id.* ¶¶ 77-82.) Count 16 charges Mr. Erickson with making a false statement in violation of 18 U.S.C. § 1001. (*Id.* ¶¶ 83-84.) Mr. Erickson argues that the tax evasion counts are multiplicitous to the aiding the preparation of false returns and false statements counts because all charges are based on his filing of false tax returns or false statements me made to the IRS-CI. But the question is not whether the conduct alleged in each offense overlaps, it is whether each offense requires proof of an element not required by the other.

To prove tax evasion in violation of § 7201, the government must prove that (1) Mr. Erickson owed substantial income tax; (2) he attempted to evade that tax by taking some affirmative act; and (3) he acted willfully. Eighth Cir. Crim. Model Jury Instructions, Instruction 6.26.7201 (2023); *United States v. Gustafson,* 528 F.3d 587, 592 (8th Cir. 2008). To prove aiding and assisting in the preparation of materially false individual tax returns in violation of § 7206(2) the government must prove "(1) [Mr. Erickson] aided, assisted, procured, counseled, advised or caused the preparation and presentation of a

return; (2) the return was fraudulent or false as to a material matter; and (3) the act of the defendant was willful." *United States v. Morris*, 723 F.3d 934, 941 (8th Cir. 2013) (quoting *United States v. McLain,* 646 F.3d 599, 604 (8th Cir. 2011)). And to prove a false statement to a federal agency in violation of § 1001, the government must prove (1) Mr. Erickson knowingly and intentionally made the statement or representation as charged; (2) the statement was false or fraudulent; (3) the statement concerned a material fact; (4) the statement was made about a matter within the IRS's jurisdiction; and (5) Mr. Erickson knew it was untrue. Eighth Cir. Crim. Model Jury Instructions, Instruction 6.18.1001B. Because each of these offenses requires the government to prove an element not required by the other, Counts 1-5 are not multiplicitous to Counts 6-16.

## B.    Counts 1-5 are not duplicitous.

"Duplicity is the joining in a single count of two or more distinct and separate offenses." *United States v. Moore*, 184 F.3d 790, 793 (8th Cir. 1999) (quoting *United States v. Street*, 66 F.3d 969, 974 (8th Cir. 1995)) (cleaned up). "The risk behind a duplicitous charge is that a jury may convict the defendant without unanimous agreement on a particular offense." *Id.* But "when the underlying statute is one which merely enumerates one or more ways of committing a single offense" the charge is not duplicitous. *Id.* "In that case, all of the different ways of committing that same offense may be alleged in the conjunctive in one count, and proof of any one of the enumerated methods will sustain a conviction." *Id.*

Counts 1-5 are not duplicitous. A statute which creates several offenses from one is different from a statute which "enumerates several ways of committing the same offense."

17

*Gerberding v. United States,* 471 F.2d 55, 59 (8th Cir. 1973). Where, as here, "the statute specifies two or more ways in which one offense may be committed, all may be alleged in the conjunctive in one count of the indictment, and proof of any one of the methods will sustain a conviction." *Id.* Here, § 7201, prohibits attempts to evade tax "in any manner." This may include, among other acts, filing a false return, lying to the IRS with the intent to evade taxes owed for the year charged, or both. *See Spies v. United States,* 317 U.S. 492, 499 (1943) ("Congress did not define or limit the methods by which a willful attempt to defeat and evade might be accomplished.") And the government need not prove each affirmative act alleged. *See United States v. McKee*, 942 F.2d 477, 479 (8th Cir. 1991) ("Similarly, the jury could convict McKee of violating section 7201 so long as it found the essential elements of the offense. . . regardless of whether it found that McKee was guilty of each instance of conduct alleged in the indictment."). Here, Counts 1-5 charge only one offense: five counts of tax evasion from 2014 to 2018, with each year charged as a single count. Each count alleges that Mr. Erickson used multiple means to commit the offense, but the proof of any one method is adequate to support a conviction of a single count.

To the extent that there is any risk of a nonunanimous conviction, as Mr. Erickson contends, dismissal of Counts 1-5 is unwarranted. Rather, any risk of a nonunanimous conviction can be cured by a limiting instruction to the jury. *See United States v. Hecker*, No. 10-cr-32 (JNE/SRN), 2010 WL 3463393, at *5 (D. Minn. July 6, 2010), *R. & R. adopted*, 2010 WL 3463396 (D. Minn. Aug. 30, 2010) (quoting *United States v. Rabinowitz,* 56 F.3d 932, 933 (8th Cir. 1995) ("The risk of a nonunanimous jury verdict inherent in a duplicitous count may be cured by a limiting instruction.")).

18

Accordingly, the Court recommends Mr. Erickson's Motion to Dismiss for Multiplicity and Duplicity (Doc. 47) be denied.

## VI.  MR. ERICKSON'S MOTION TO DISMISS FOR CHARGING IN VIOLATION OF STATUTE OF LIMITATIONS SHOULD BE DENIED.

The Court turns now to Mr. Erickson's Motion to Dismiss for Charging in Violation of the Statute of Limitations (Doc. 49). In this motion, Mr. Erickson argues that the applicable six-year statute of limitations period for offenses listed in Title 26 of the United States Code, expired in 2023 for Counts 1-3, 6, 7, 10, 11, 12, and 13—well before he was charged by indictment in January 2024. Rather than challenge the "precise contours of the [g]overnment's arguments," in his opening motion, Mr. Erickson "move[d] to dismiss these counts because," he argues "they are outside the relevant limitations period." (*Id.* at 4.) In its Response, the government asserts that Mr. Erickson's challenge to the timeliness of the charges fails because each count falls under two statutory tolling provisions—26 U.S.C. § 6531(8), and 18 U.S.C. § 3292—and thus each count is timely.

In his Reply, Mr. Erickson does not directly challenge the government's application of § 6531(8) to his case. He concedes that he spent time outside the United States as reflected in Gov't Ex. D (*found at* Doc. 50-4), and thus the statute of limitations was tolled under § 6531. (Doc. 51 at 11.) As for the government's assertion § 3292 also applies to his case to toll the statute of limitations, Mr. Erickson argues that the government "has failed to meet its burden to justify the application of the § 3292 tolling orders" to his case. (Doc. 51 at 13.) According to Mr. Erickson, the government bears the burden to establish that § 3292 applies to his case but has made no effort to satisfy that burden here.

19

**A.      Tolling under 26 U.S.C. § 6531(8).**

The Court first addresses § 6531(8)'s applicability to Mr. Erickson's case. Ordinarily, the statute of limitations for tax evasion and filing false tax returns is six years. 26 U.S.C. § 6531. But "[t]he time during which the person committing any of the various offenses arising under the internal revenue laws is outside the United States . . . shall not be taken as any part of the time limited by law for the commencement of such proceedings." 18 U.S.C. § 6531(8).

The government asserts that the charges against Mr. Erickson are timely, in part, due to tolling based on the number days Mr. Erickson spent outside of the United States between the date of the earliest alleged affirmative act, October 15, 2015, through the date Mr. Erickson was charged by Indictment.[3] Mr. Erickson does not contest the number of days tolled under § 6531(8), but cautions that the tolling table provided by the government on page 13 of its Response is misleading, because the "total excludable days [Mr.] Erickson was outside the U.S. [is] not pertinent to . . . each particular count implicated" in his motion to dismiss. (Doc. 51 at 11.) Because there is no evidence the government applied the total excludable days between 2015 and 2022— 275 days—to each particular count, and Mr. Erickson offers no other objection to the government's representations related to tolled days under § 6531(8), the Court finds that Counts 1-3, 6, 7, and 10-12 were properly tolled under § 6531(8).

**B.      Tolling under 18 U.S.C. § 3292.**

---

[3] In its Response, the government details the number of tolled days per applied to each count under § 6531(8) and § 3292. (Doc. 50 at 1-15.)

The Court next addresses § 3292's application to Mr. Erickson's case. Under § 3292, the ordinary six-year statute of limitations may be suspended for a maximum of three years to permit time for international investigation, as long as certain conditions are met. Section 3292 states:

> [u]pon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.

18 U.S.C. § 3292(a)(1). Tolling under this provision begins on the date when the "official request" is made and ends when the foreign authority takes "final action" on the request; and the suspension period may last no longer than three years. *Id*. § 3292(b), (c)(1). If the "final action" occurs before the statute of limitations was originally set to expire, the statute of limitations is tolled for no more than six months. *Id*. § 3292(c)(2).

The Eighth Circuit has not interpreted § 3292, but courts in other circuits have. "A plain reading of § 3292 demonstrates that a district court's decision to suspend the running of a statute of limitations is limited to two considerations: 1) whether an official request was made; and 2) whether that official request was made for evidence that reasonably appears to be in the country to which the request was made." *United States v. Flynn*, No. 16-cr-347 (ADM/KMM), 2017 WL 8947195, at *2 (D. Minn. Aug. 11, 2017) (quoting United *States v. Broughton*, 689 F.3d 1260, 1273 (11th Cir. 2012)), *R. &R. adopted,* 2017 WL 5462184 (D. Minn. Nov. 14, 2017). A request to suspend the statute of limitations

must include "something with evidentiary value—that is, testimony, documents, proffers, and other submissions bearing some indicia of reliability—tending to prove that it is reasonably likely that evidence of the charged offense is in a foreign country." *Id.* (quoting *United States v. Trainor*, 376 F.3d1325, 1332 (11th Cir. 2004)) (further citation omitted). The government filed two applications to suspend the statute of limitations based in investigations in several foreign countries. The first, a November 2022 application was based on an investigation in Canada. (*See* Doc. 50-2.) The second, a July 2023 application was based on investigations in the Cayman Islands, Curacao, Dominica, Lithuania, Luxembourg, the Netherlands, Poland, and the United Kingdom. (*See* Doc. 50-3.) Both applications were granted by a judge in the District of Minnesota. The government has not submitted the *ex parte* applications as evidence here, but relies on Judge Menendez's Orders granting the applications to establish the applicability of § 3292 to Mr. Erickson's case.

### The 2022 Order

In November 2022, counsel for the government, Assistant United States Attorney Amanda R. Scott, presented an *ex parte* application for a court order suspending the statute of limitations under 18 U.S.C. § 3292. (*See* Doc. 50-2 at 1.) The November 2022 Order's findings of fact reflect that the government submitted with its application a "declaration of Trial Attorney Amanda R. Scott, made under penalty of perjury on November 21, 2022." (*Id.*) The Order states that the declaration described the Grand Jury proceedings and summarized the relevant facts uncovered during the investigation. According to the Order, a grand jury in the District of Minnesota was investigating Mr. Erickson for possible federal

22

law violations including "conspiracy to defraud the United States in violation of 18 U.S.C. § 371; willfully attempting to evade or defeat a tax in violation of 26 U.S.C. § 7201; and willfully making and subscribing a false return, in violation of 26 U.S.C. § 7206(1)." (*Id.*)

The November 2022 Order found, based on a preponderance of the evidence before the court, that the government "made an official request, as defined in 18 U.S.C. § 3292(d), to an 'authority of a foreign country' in Canada on March 4, 2019" that "[t]he evidence sought [was] related to the offenses under investigation," and "based on a preponderance of the evidence presented to the Court, that at the time the official request was made, such evidence of the offenses under investigation is, or was, located in Canada[.]" (*Id.* at 2.) Finally, the court found, "based on the preponderance of the evidence presented to the Court, that the Central Authority of Canada took 'final action' on the official request on August 24, 2020—before the limitations period would expire without regard to Section 3292." (*Id.*) Based on these findings, Judge Menendez granted the November 2022 application and ordered "that the running of the statute of limitations of the offenses set forth in the [2022 application] [was] [t]hereby SUSPENDED as of March 4, 2019, for a period of six months, as authorized by 18 U.S.C. § 3292(c)(2)." (*Id.* at 3.)

### *The 2023 Order*

Likewise, in July 2023, counsel for the government, United States Attorney Amanda R. Scott, presented an *ex parte* application for a court order suspending the statute of limitations under 18 U.S.C. § 3292. (*See* Doc. 50-3 at 1.) The July 2023 Order's findings of fact reflect that the government submitted with its application a "declaration of Trial Attorney Amanda R. Scott, made under penalty of perjury on July 21, 2023." (*Id.* at 2.)

The Order states that declaration described the Grand Jury proceedings and summarized

the relevant facts uncovered during the investigation. According to the Order, a Grand Jury

in the District of Minnesota was investigating Mr. Erickson for possible federal law

violations including

> conspiracy to defraud the United States in violation of 18 U.S.C. § 371;
> materially making false or fraudulent statements, in violation of 18 U.S.C. §
> 1001; bank fraud, in violation of 18 U.S.C. § 1344; willfully attempting to
> evade or defeat a tax in violation of 26 U.S.C. § 7201; and willfully making
> and subscribing a false return, in violation of 26 U.S.C. § 7206(1); and failing
> to disclose overseas accounts, in violation of 31 U.S.C. §§ 5314, 5322.

(*Id*. at 1.)

The July 2023 Order found, "based on a preponderance of the evidence before the

Court, that evidence of the offenses under investigation [was] located in the Cayman

Islands, Curacao, Dominica, Lithuania, Luxembourg, the Netherlands, Poland, and the

Untied Kingdom[.]" (*Id*. at 2.) The court also found

> based on a preponderance of the evidence that [the government] 'made an
> official request, as defined in 18 U.S.C. § 3292(d) to an 'authority of a foreign
> country' in Curacao on February 21, 2023 . . . in the Netherlands on May 22,
> 2023 . . . in the United Kingdom on May 22, 2023 . . . in Luxembourg on
> June 1, 2023 . . . in Poland on June 2, 2023 . . . in the Cayman Islands on
> June 9, 2023 . . . in Lithuania on June 12, 2023 . . .[and] in Dominica on June
> 15, 2023.

(*Id*. at 2-3.) Based on these findings, Judge Menendez granted the 2023 application and

ordered "that the running of the statute of limitations of the offenses set forth in the [2023

Application] [was] [t]hereby SUSPENDED for the period authorized by 18 U.S.C.

§ 3292(c)[.]" (*Id*. at 3.)

Mr. Erickson does not challenge the government's position about how long the statutes of limitations were suspended under § 3292, if it was properly applied to his case. Rather, he alleges that the government has failed to satisfy its burden to submit "some evidence" that the foreign evidence it sought met the requirements of § 3292, and thus, in his estimation, the November 2022 and July 2023 tolling Orders are invalid. With this context, if the government met the evidentiary requirement of § 3292, then all the counts in the indictment are timely.

The Court finds, based on the November 2022 and July 2023 Orders, that the government satisfied its burden to submit some evidence to establish that the foreign evidence it sought met the requirements of § 3292. Both Orders were supported by legally sufficient evidence—Ms. Scott's declarations. *See Flynn*, 2017 WL 8947195, at *5 (citing *Trainor*, 376 F.3d at 1336) ("[T]he Government must present *some* evidence—something of evidentiary value—that it reasonably appears the requested evidence is in a foreign country."). Although the government has not submitted the 2022 or 2023 applications themselves for the Court's review on this issue, the judicial Orders signed by Judge Menendez both represent that Ms. Scott's declarations were signed, dated, and provided under penalty of perjury, thus taking on the equivalent character of an affidavit. *See* 28 U.S.C. § 1746. Both Orders also represent that Ms. Scott's declarations described the nature of the criminal investigations that the grand jury was conducting and the information known about the alleged tax evasion scheme Mr. Erickson was suspected of taking part in. And although the tolling Orders do not cite every statutory violation Mr. Erickson currently faces there is "no requirement that the [g]overnment list each and every offense that is

being investigated. *United States v. Michel*, No. 19-cr-148-1 (CKK), 2019 WL 5797669, at *11 (D.D.C. Nov. 6, 2019) (collecting cases); *see also United States v. Michel*, No. 19-cr-148-1 (CKK), 2019 WL 5797669, at *11 (D.D.C. Nov. 6, 2019) ("Listing those offenses by statutory citation would do nothing to facilitate the foreign evidence request, and, most importantly, it is not required by 18 U.S.C. § 3292."). As a result, the Court finds that the § 3292 tolling Orders apply to the charges Mr. Erickson faces, and thus the charges are timely.

Accordingly, the Court recommends that Mr. Erickson's Motion to Dismiss for Charging in Violation of the Statute of Limitations (Doc. 49) be denied.

## VII.  MR. ERICKSON'S MOTION TO SUPPRESS POLE CAMERA FOOTAGE SHOULD BE DENIED AS MOOT.

Next, the Court addresses Mr. Erickson's Motion to Suppress Pole Camera Footage (Doc. 46). In his motion, Mr. Erickson argues that continuous pole camera footage taken of his home and business in the spring and summer 2019 should be suppressed as unreasonable warrantless searches. The government represents to the Court that it will not offer the pole camera footage of Mr. Erickson's home or business during its case-in-chief at trial. (Doc. 66.) Based on the government's representation to the Court that it will not offer the footage during its case-in-chief at trial, the Court recommends that Mr. Erickson's Motion to Suppress Pole Camera Footage (Doc. 46) be denied as moot.

## VIII.  MR. ERICKSON'S MOTION TO SUPPRESS EMAIL EVIDENCE SHOULD BE DENIED.

Finally, the Court addresses Mr. Erickson's Motion to Suppress Email Evidence (Doc. 48.) In his motion, Mr. Erickson moves the Court to suppress evidence obtained from

the execution of a warrant to search his email account, dave@halsteadbayholdings.com.

Mr. Erickson argues that there was no probable cause to issue the warrant because the

information in the warrant affidavit described "completely non-criminal acts" and was stale

or unreliable. (*Id.* at 2-3.) The government disagrees and argues that probable cause

supported the search warrant and even if the warrant were constitutionally defective, the

good-faith exception to the exclusionary rule would save the evidence from suppression.

## A.   A substantial basis supports the issuing judge's finding of probable cause for the warrant.

The Fourth Amendment requires that "no [w]arrants shall issue, but upon probable

cause, supported by [o]ath or affirmation, and particularly describing the place to be

searched, and the persons or things to be seized." U.S. Const. amend. IV. "[P]robable cause

is a fluid concept—turning on the assessment of probabilities in particular factual

contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v.*

*Gates*, 462 U.S. 213, 232 (1983). "The task of the issuing magistrate is simply to make a

practical, common-sense decision whether, given all the circumstances set forth in the

affidavit before [them] . . . there is a fair probability that contraband or evidence of a crime

will be found a in particular place." *United States v. Williams*, 477 F.3d 554, 557 (8th Cir.

2007) (quoting *Gates*, 462 U.S. at 238). Courts should read affidavits with "common sense

and 'not in a . . . hyper technical fashion.'" *United States v. Caswell*, 436 F.3d 894, 897

(8th Cir. 2006) (quoting *Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998)). And

courts may only consider the information found within the four corners of the affidavit in

determining whether probable cause for the warrant exists. *United States v. Hussein*, No.

20-cr-75 (ADM/BRT), 2020 WL 7685372, at *2 (D. Minn. Oct. 21, 2020), *R. & R. adopted*, 2020 WL 7310899 (D. Minn. Dec. 11, 2020). "However, judges are permitted to draw reasonable inferences from the totality of the circumstances when making the probable cause determination." *United States v. Santos-Hunter,* No. 23-CR-310 (DWF/DJF), 2024 WL 2892862, at *5 (D. Minn. Mar. 6, 2024) (quoting *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000)) (cleaned up), *R. & R. adopted,* 2024 WL 1928711 (D. Minn. May 2, 2024).

Once a warrant has issued, courts reviewing the warrant after the fact accord "great deference to the issuing judge's determination that [the] affidavit established probable cause." *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009) (quoting *United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2009)). Accordingly, the reviewing judge does not examine the warrant to determine whether the issuing judge "was presented with probable cause," instead, reviewing courts, such as this one, "need only ensure that the issuing official had a substantial basis to conclude that probable cause existed." *United States v. Anderson,* 933 F.2d 612, 614 (8th Cir. 1991).

Here, the affidavit sought to establish probable cause to believe Mr. Erickson took part in an ongoing scheme to evade paying taxes. Toward that end, the affidavit establishes that Mr. Erickson exercised control over overseas businesses and routed revenue from those businesses to HBH's United States bank account; that Mr. Erickson did not report all the deposits as income on HBH's tax returns; and Mr. Erickson's tax preparers relied on his representations about the nature of those payments as loans. The affidavit also establishes that the affiant corroborated the Informant's statements related to Mr.

Erickson's tax scheme with emails, bank records, and interviews with Mr. Erickson's tax preparers and bookkeepers which, show Mr. Erickson took part in the alleged scheme from 2013 until at least 2019.

The fact that the affidavit describes non-criminal behavior does not warrant suppression because "[c]orroboration of minor, innocent details can suffice to establish probable cause." *United States v. Atayde-Ortiz,* No. 21-cr-158 (MJD/ECW), 2022 WL 3566997, at *5 (D. Minn. June 16, 2022), *R. & R. adopted sub nom. United States v. Atayde-Ortis*, 2022 WL 3566879 (D. Minn. Aug. 18, 2022); *United States v. Allen*, 297 F.3d 790, 794 (8th Cir. 2002) ("innocent behavior can provide the basis for establishing the existence of probable cause"). While the affidavit may have included innocent details, they sufficiently corroborated the Informant's information to establish probable cause.

Nor is the information in the affidavit stale. Although the affiant's interview with the Informant took place in 2016, the affidavit establishes that the affiant was investigating Mr. Erickson's ongoing criminal scheme to evade taxes from at least 2013 through 2018. "When, as here, the criminal activity is continuous and ongoing, any lapse of time is less significant." *United States v. Terrell*, No. 15-cr-3051-MWB, 2016 WL 11372499, at *12 (N.D. Iowa May 31, 2016) (collecting cases), *R. & R. adopted,* 2016 WL 3920236 (N.D. Iowa July 18, 2016), *aff'd,* 912 F.3d 1125 (8th Cir. 2019); *United States v. Macklin*, 902 F.2d 1320, 1326 (8th Cir. 1990) (passage of time between events and issuance of warrant is less significant with continuing criminal enterprise). The affidavit contained some information that predated the application for the warrant by more than seven years, but it also contained information as recent as 2019, just one year before the affiant applied for

the search warrant in February 2020. The Court therefore finds that the information in the warrant affidavit was not stale.

Accordingly, the Court finds that a substantial basis supports the issuing judge's finding of probable cause for the warrant to search Mr. Erickson's email, dave@halsteadbayholdings.com.

## B.    Good faith.

While evidence seized under the authority of a defective warrant will generally be excluded, under the *Leon*[4] good-faith exception, "evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008) (citing *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007)). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the issuing judge's authorization." *Proell*, 485 F.3d at 430 (quoting *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006) (cleaned up)). To determine whether a law enforcement officer had "an objectively reasonable belief in the existence of probable cause," courts assess "the totality of the circumstances, including information known to the officer but not presented to the issuing judge." *United States v. Norey,* 31 F.4th 631, 635 (8th Cir. 2022), *reh'g denied,* No. 21-2406, 2022 WL 13748851 (8th Cir. Oct. 24, 2022) (quoting *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011)).

---

[4] *United States v. Leon*, 468 U.S. 897 (1984).

Although the Court finds the email warrant was supported by probable cause, the Court also finds that even if there were a constitutional deficiency within the warrant, the good-faith exception applies. No evidence within the affidavit or warrant suggests that law enforcement's reliance on the email warrant was not in good faith or unreasonable. Accordingly, the Court concludes that the good-faith exception would apply to the email warrant and the evidence discovered because of its execution should not be suppressed even if the warrant were unconstitutional.

The Court therefore recommends that Mr. Erickson's Motion to Suppress Email Evidence (Doc. 48) be denied.

## ORDER

Accordingly, based on all the files, records, and proceedings above, **IT IS ORDERED** that:

1. Defendant David Erickson's Motion for Bill of Particulars (Doc. 42) is **DENIED**; and

2. Mr. Erickson's Motion for Discovery (Doc. 43) is **DENIED**.

## RECOMMENDATION

Accordingly, based on all the files, records, and proceedings above, **IT IS RECOMMENDED** that:

1. Mr. Erickson's Motion to Dismiss Count 16 (Doc. 44) be **DENIED**;

2. Mr. Erickson's Motion to Dismiss for Preindictment Delay (Doc. 45) be **DENIED**;

3.    Mr. Erickson's Motion to Suppress Pole Camera Footage (Doc. 46) be **DENIED** as moot;

4.    Mr. Erickson's Motion to Dismiss for Multiplicity and Duplicity (Doc. 47) be **DENIED**;

5.    Mr. Erickson's Motion to Suppress Email Evidence (Doc. 48) be **DENIED**; and

6.    Mr. Erickson's Motion to Dismiss for Statute of Limitations Violation (Doc. 49) be **DENIED**.


Date: March 14, 2025                        *s/Douglas L. Micko*
                                            DOUGLAS L. MICKO
                                            United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).