UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 24-CR-7 (JMB/DLM) |
| Plaintiff, | |
| v. | **DEFENDANT'S RESPONSE TO UNITED STATES' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* TO SEQUESTER WITNESSES** |
| DAVID V. ERICKSON, | |
| Defendant. | |

David Erickson, by and through his undersigned attorneys, respectfully responds to the Government's briefing on whether Revenue Agent David Hewell is "essential" to the Government's case within the meaning of Federal Rule of Evidence 615(3). The Court should sequester Agent Hewell from the courtroom because of the outsized role the Government seeks to have him play in Erickson's case, and because they have not met the burden Federal Rule of Evidence 615 requires. They have not demonstrated that he is "essential."

### The Government's Expert Disclosure

On January 20, 2025, the Government filed a notice and summary of expected expert testimony at Erickson's trial. (Doc. 52). This notice, which has not been narrowed, said their expert would testify to all the following:

- "summary witness testimony regarding tax and financial matters" including 8 specified areas of IRC regulations and guidance. *Id.*, pg. 2.

1

- "what constitutes a bona fide debt. Specifically, to constitute a bona fide debt, at the time of the transfer, there must be a real expectation of repayment and an intent on the part of the purported creditor to secure repayment." *Id.*
- "discussion of the factors that the IRS considers when examining the *accuracy* of liabilities related to debts reported by a taxpayer." *Id.*
- Hewell is expected to "present and summarize evidence admitted through other witnesses regarding falsities reported on tax returns filed for Erickson and HBH, including Erickson's underreported business income, during the prosecution years" *Id.*
- Hewell is expected to present exhibits "illustrating the following: the flow of funds from the Foreign Companies to Erickson (directly or indirectly), without corresponding repayment" *Id.* at pg. 3.
- Hewell is expected to summarize "communications between Erickson and employees of the Foreign Companies around the time of the financial transactions at issue" *Id.* at pg. 3.
- Hewell is expected to summarize "other source documents relating to the transactions at issue between Erickson and the Foreign Companies showing that those transactions were not conducted at arm's length." *Id.* at pg. 3.

The Government gave notice that Agent Hewell was expected "to conclude that the amounts reported on HBH's tax returns for tax years 2014 through 2018 as 'other current liabilities' owed to the Foreign Companies do not constitute bona fide loans" and was

2

expected to make this conclusion based on his "review, analysis, training, and experience as SEP RA[] with the IRS." *Id.* at pg. 2.

## Argument

Federal Rule of Evidence 615 states that "[a]t a party's request, the court must order witnesses excluded from the courtroom so that they cannot hear other witnesses' testimony." Defense has requested this sequestration.

This mandatory language permits only four exceptions, and the one exception the Government has invoked here is (3): "any person whose presence a party shows to be essential to presenting the party's claim or defense." The text of the rule makes it plain that it is the Government's burden to justify this exception, and merely being an expert is insufficient. "The text of Rule 615 plainly does not provide for such a per se exception; rather, Rule 615(3) confers discretion upon district courts to determine whether a given witness (of whatever stripe) is essential." *United States v. Olofson*, 563 F.3d 652, 660 (7th Cir. 2009). The Government has failed to prove that their summary expert's presence in the courtroom is *essential* to presenting their case. While at common law "the party desiring sequestration previously had to convince the court to grant it, under Rule 615 sequestration must be given unless the party opposing the exclusion has convinced the court to exercise its discretion to except a particular witness." *Gov't of Virgin Islands v. Edinborough*, 625 F.2d 472, 475 (3d Cir. 1980)

"It is now well recognized that sequestering witnesses is (next to cross-examination) one of the greatest engines that the skill of man has ever invented for the

3

detection of liars in a court of justice." *Opus 3 Ltd. v. Heritage Park, Inc.*, 91 F.3d 625, 628 (4th Cir. 1996) (quoting Wigmore on Evidence § 1838, at 463, internal quotes and cites removed). The purpose of sequestration is to "prevent witnesses from tailoring their testimony to that of prior witnesses and to aid in detection of dishonesty." *United States v. Vallie*, 284 F.3d 917, 921 (8th Cir. 2002). For this reason, courts often construe the exceptions to rule 615 "narrowly in favor of the party requesting sequestration." *United States v. Ali*, 991 F.3d 561, 568 (4th Cir. 2021); *See also United States v. Jackson*, 60 F.3d 128, 136 (2d Cir. 1995) (placing the burden to demonstrate lack of prejudice on appeal "on the party that had opposed sequestration").

The Government in their brief points the Court to a number of cases in which experts are permitted to act as summary witnesses. Erickson first notes that nearly all the Government's cases concerning "summary expert" do not concern the question of sequestration. Sequestration does not appear to come up at all in *United States v. Pree*, 408 F.3d 855, 870 (7th Cir. 2005); *United States v. Sabino*, 274 F.3d 1053, 1070 (6th Cir. 2001); *United States v. West*, 58 F.3d 133, 140 (5th Cir. 1995); *United States v. Moore,* 997 F.2d 55, 58 (5th Cir. 1993); *United States v. Marchini*, 797 F.2d 759, 761 (9th Cir. 1986); or *United States v. Voorhies*, 658 F.2d 710, 715 (9th Cir. 1981).

While experts are *often* exempt from sequestration orders, there is by no means a *presumption* that an expert be exempt from sequestration or be found "essential" to the Government's case. In fact, courts have concluded quite the opposite. The reason is simple: "had the framers intended it, they would have said so, or added a fourth

4

exception." *Morvant v. Constr. Aggregates Corp.*, 570 F.2d 626, 630 (6th Cir. 1978). Indeed, courts have recognized that the sheer scope an expert's permitted testimony means that "in some circumstances at least, the trial judge could be justified in holding that [an expert's] presence in the courtroom was not essential and that his exclusion from the courtroom might in a given case make a more objective and, perhaps, more honest witness out of him." *Id. See also Olofson*, 563 F.3d at 660 ("Rule 703 is not an automatic exemption for expert witnesses from Rule 615 sequestration").

The Government has not met their burden here, in their attempt to transform Revenue Agent Hewell into a witness able to render expert *and* summary opinion *and* to be so essential to the Government's case as to be exempt from Rule 615's strong presumption of sequestration. Few cases cited by the Government stand for a proposition that an expert witness can present *both* summary testimony *and* be allowed to be present during the entire trial. Cases that allow a witness to serve in this capacity suggest a much more limited role than what the Government has in mind for Agent Hewell. *See United States v. Conners*, 894 F.2d 987, 991 (8th Cir. 1990); *United States v. Ray*, 589 F. Supp. 3d 298, 299 (S.D.N.Y. 2022); *United States v. Ratfield*, 342 F. App'x 510, 513 (11th Cir. 2009)*.* None of these cases look remotely like what the Government expects from Hewell, who will likely be their most important witness. The Government's proffered eight-factor test for demarcating income from loans, which was disclosed in their expert notice, is incredibly nuanced and fact dependent. The Government seeks to call Hewell to examine:

5

> "1) whether the promise to repay is evidenced by a note or other instrument that evidences indebtedness, (2) whether interest was charged or paid, (3) whether a fixed schedule for repayment and a fixed maturity date were established, (4) whether collateral was given to secure payment, (5) whether repayments were made, (6) what the source of any payments was (7) whether the borrower had a reasonable prospect of repaying the loan and whether the lender had sufficient funds to advance the loan, and (8) whether the parties conducted themselves as if the transaction was a loan." (Doc. 52, pg. 5).

Erickson anticipates for example that Agent Hewell will be called upon to opine on whether the process by which Erickson repaid his loan was "genuine" or was done "at arm's length", whether the collateral underlying Erickson's loans was truly "sufficient", the extent to which Erickson had a "reasonable" prospect of repaying the loan, and the precise way in which the "parties conducted themselves as if the transaction was a loan." In many ways, this is the entire Erickson case. *See, e.g.,* Doc. 158 at pg. 3 ("At its core, this case boils down to one bedrock fact: the millions of dollars in so-called loans that the Defendant claimed on his tax returns were not, in reality, true loans.").

Of course, whether a loan is *bona fide* is "a factual question." *Jaques v. Comm'r*, 935 F.2d 104, 107 (6th Cir. 1991). In Erickson's case, this fact must be determined by the jury, and Agent Hewell's combined role as summary and expert witness (if not a fact witness as well), coupled with his ability to stand in the jury's shoes and see the entire trial as they do, runs an extreme risk of usurping the jury's role entirely: Agent Hewell will testify he has reviewed all of the exhibits, listened to all of the testimony, watched the display of all exhibits, and in the process he will effectively become the thirteenth juror. He will be able to shape his testimony to conform to the evidence presented at trial

6

and the cross examination of the witnesses. The Government proposes that in this capacity he give an opinion on the ultimate issue in the case: whether there were *bona fide* loans given to Erickson. In his testimony, after being present in the courtroom, he will be able to effectively testify: "I've seen everything you've seen, I've heard everything you've heard, and besides that, I'm a trained expert on the issue of what is income and what is not, and my opinion is that these transactions are not loans." This should not be permitted. His presence is not essential to the Government's case, it is simply to prejudicially bolster his credibility to the jury.

## Conclusion

For all of these reasons, the Court should find the Government has not met their burden of establishing that Revenue Agent Hewell is exempt from the strong presumption of sequestration that Federal Rule of Evidence 615 provides.

Dated: August 5, 2025                              Respectfully submitted,

                                                                                      */s/ William J. Mauzy*
William J. Mauzy (#68974)
William R. Dooling (#0402244)
Mauzy Law Office, PA
650 Third Avenue South
Suite 260
Minneapolis, MN 55402
(612) 340-9108
wmauzy@mauzylawfirm.com
wdooling@mauzylawfirm.com
*Attorneys for Defendant*