*DL* *Seller immediately*

## PURCHASE AGREEMENT

This form approved by the Minnesota Association of REALTORS®,
which disclaims any liability arising out of use or misuse of this form.
© 2016 Minnesota Association of REALTORS®, Edina, MN

1. Date _____ 01/19/2017

2. Page 1 of _____

3. BUYER (S): _____ Loydsville Corporation NV and/or assigns

4. _____

5. Buyer's earnest money in the amount of _____

6. Four Hundred Thirty Thousand _____ Dollars ($ _____ 430,000.00 _____ )

7. shall be delivered to ~~listing broker no later than two (2) Business Days~~ after Final Acceptance Date of this Purchase

8. Agreement. ~~Buyer and Seller agree that listing broker shall deposit any earnest money in the listing broker's trust~~

9. ~~account within three (3) Business Days of receipt of the earnest money or Final Acceptance Date of this Purchase~~  *DL*

10. ~~Agreement, whichever is later.~~

11. Said earnest money is part payment for the purchase of the property located at

12. Street Address: 5085  Greenwood Cir

13. City of _____ Greenwood _____ , County of _____ Hennepin

14. State of Minnesota, legally described as

15. LOT 009 BLOCK 001 STRICKLAND ADDN

16.

17. Said purchase shall include all improvements, fixtures, and appurtenances on the property, if any, including but not

18. limited to, the following (collectively the "Property"): garden bulbs, plants, shrubs, trees, and lawn watering system;

19. shed; storm sash, storm doors, screens, and awnings; window shades, blinds; traverse, curtain, and drapery

20. rods, valances, drapes, curtains, window coverings, and treatments; towel rods; attached lighting and bulbs; fan fixtures;

21. plumbing fixtures; garbage disposals; water softener; water treatment system; water heating systems, heating systems;

22. air exchange system; radon mitigation system; sump pump; TV antenna/cable TV jacks and wiring/TV wall mounts;

23. wall/ceiling-mounted speakers and mounts; carpeting; mirrors; garage door openers and all controls; smoke detectors;

24. fireplace screens, door, and heatilators; BUILT-INS: dishwashers; refrigerators; wine/beverage refrigerators; trash

25. compactors; ovens; cook-top stoves; warming drawers; microwave ovens; hood fans; shelving; work benches; intercoms;

26. speakers; air conditioning equipment; electronic air filter; humidifier/dehumidifier; liquid fuel tanks (and controls);

27. pool/spa equipment; propane tank (and controls); security system equipment; TV satellite dish; AND the following

28. personal property shall be transferred with no additional monetary value, and free and clear of all liens and encumbrances:

29. _____

30. _____

31. Notwithstanding the foregoing, leased fixtures are not included.

32. Notwithstanding the foregoing, the following item(s) are excluded from the purchase:

33. _____

34. _____

35. Seller has agreed to sell the Property to Buyer for the sum of ($ _____ 1,325,000.00 _____ )

36. _____ One Million Three Hundred Twenty-Five Thousand _____ Dollars,

37. which Buyer agrees to pay in the following manner:

38. 1. CASH of _____ percent (%) of the sale price, or more in Buyer's sole discretion, which includes the earnest

39. money; PLUS

40. 2. FINANCING of _____ percent (%) of the sale price, which will be the total amount secured against this

41. Property to fund this purchase.

42. Such financing shall be: (Check one.) ☐ a first mortgage; ☐ a contract for deed; or ☐ a first mortgage with

43. subordinate financing, as described in the attached Addendum:

44. ☐ Conventional ☐ FHA ☐ DVA ☐ Assumption ☒ Contract for Deed.
(Check one.)

45. The date of closing shall be _____ On or before _____ 3/31 , 20 19 _____

MN:PA-1 (8/16)

*Assignment of existing*  *DL*  Instanetforms

Government Exhibit
24-CR-7
G-482

USAProd-00010176

**PURCHASE AGREEMENT**

46. Page 2  Date _____ 01/19/2017 _____

47. Property located at __5085 Greenwood Cir_____

                                            Greenwood     MN    55331

48. **SALE OF BUYER'S PROPERTY CONTINGENCY:** *(Check one.)*
49. ☐ 1. This Purchase Agreement is subject to an *Addendum to Purchase Agreement: Sale of Buyer's Property*
50.         *Contingency* for the sale of Buyer's property. (If checked, see attached *Addendum.*)
51.      OR
52. ☐ 2. This Purchase Agreement is contingent upon the successful closing on the Buyer's property located at
53. _____ , which is scheduled to close on
54. _____ , 20 _____ pursuant to a fully executed purchase agreement. If Buyer's
55.         property does not close, this Purchase Agreement is canceled. Buyer and Seller shall immediately sign a
56.         *Cancellation of Purchase Agreement* confirming said cancellation and directing all earnest money paid
57.         here to be refunded to Buyer. The language in this paragraph supersedes any other provision to the contrary
58.         in any financing addendum made a part of this Purchase Agreement, if applicable.
59.      OR
60. ☒ 3. Buyer represents that Buyer has the financial ability to perform on this Purchase Agreement without the sale
61.         and closing on any other property.

62. This Purchase Agreement ☐ IS ☒ IS NOT subject to cancellation of a previously written purchase agreement
                                   *(Check one.)*
63. dated _____ , 20 _____ . (If answer is IS, said cancellation shall be obtained no later than
64. _____ , 20 _____ . If said cancellation is not obtained by said date, this Purchase Agreement
65. is canceled. Buyer and Seller shall immediately sign a *Cancellation of Purchase Agreement* confirming said cancellation
66. and directing all earnest money paid here to be refunded to Buyer.)

67. Buyer has been made aware of the availability of Property inspections. Buyer ☐ Elects ☒ Declines to have a
68. Property inspection performed at Buyer's expense.                *(Check one.)*

69. **INSPECTION CONTINGENCY:** This Purchase Agreement ☐ IS ☐ IS NOT subject to an *Addendum to Purchase*
70. *Agreement: Inspection Contingency.* (If answer is IS, see attached *Addendum.*) *Assignment of existing* — *DC*

71. **DEED/MARKETABLE TITLE:** Upon performance by Buyer, Seller shall deliver a: *(Check one.)*
72. ☐ **Warranty Deed,** ☐ **Personal Representative's Deed,** ☒ **Contract for Deed,** ☐ **Trustee's Deed,** or
73. ☐ **Other:** _____ **Deed** joined in by spouse, if any, conveying marketable title, subject to:
74.      (a) building and zoning laws, ordinances, and state and federal regulations;
75.      (b) restrictions relating to use or improvement of the Property without effective forfeiture provisions;
76.      (c) reservation of any mineral rights by the State of Minnesota;
77.      (d) utility and drainage easements which do not interfere with existing improvements;
78.      (e) rights of tenants as follows (unless specified, not subject to tenancies):_____
79.      _____ ; and
80.      (f) others (must be specified in writing): _____
81.      _____ .

82. **REAL ESTATE TAXES:** Seller shall pay on the date of closing all real estate taxes due and payable in all prior years
83. including all penalties and interest.

84. Buyer shall pay ☒ PRORATED FROM DAY OF CLOSING ☐ _____ 12ths OF ☐ ALL ☐ NO real estate taxes due
                                       *(Check one.)*
85. and payable in the year 20 _____ .

86. Seller shall pay ☒ PRORATED TO DAY OF CLOSING ☐ _____ 12ths OF ☐ ALL ☐ NO real estate taxes due and
                                 *(Check one.)*
87. payable in the year 20 _____ . If the closing date is changed, the real estate taxes paid shall, if prorated, be adjusted
88. to the new closing date. If the Property tax status is a part- or non-homestead classification in the year of closing, Seller
89. ☐ SHALL ☒ SHALL NOT pay the difference between the homestead and non-homestead.
               *(Check one.)*

MN:PA-2 (8/16)

**PURCHASE AGREEMENT**

90.    Page 3    Date _____ 01/19/2017

91.    Property located at  5085  Greenwood Cir _____    Greenwood    MN    55331

92.    Buyer shall pay real estate taxes due and payable in the year following closing and thereafter, the payment of which
93.    is not otherwise here provided. No representations are made concerning the amount of subsequent real estate taxes.

94.    **DEFERRED TAXES/SPECIAL ASSESSMENTS:**

95.    ☐ **BUYER SHALL PAY** ☒ **SELLER SHALL PAY** on date of closing any deferred real estate taxes (e.g., Green
       ------------------(Check one.)------------------
96.    Acres) or special assessments, payment of which is required as a result of the closing of this sale.

97.    ☐ **BUYER AND SELLER SHALL PRORATE AS OF THE DATE OF CLOSING** ☒ **SELLER SHALL PAY ON**
       ------------------(Check one.)------------------
98.    **DATE OF CLOSING** all installments of special assessments certified for payment, with the real estate taxes due and
99.    payable in the year of closing.

100.   ☐ **BUYER SHALL ASSUME** ☒ **SELLER SHALL PAY** on date of closing all other special assessments levied as
       ------------------(Check one.)------------------
101.   of the date of this Purchase Agreement.

102.   ☐ **BUYER SHALL ASSUME** ☒ **SELLER SHALL PROVIDE FOR PAYMENT OF** special assessments pending as
       ------------------(Check one.)------------------
103.   of the date of this Purchase Agreement for improvements that have been ordered by any assessing authorities. (Seller's
104.   provision for payment shall be by payment into escrow of two (2) times the estimated amount of the assessments
105.   or less, as required by Buyer's lender.)

106.   Buyer shall pay any unpaid special assessments payable in the year following closing and thereafter, the payment of
107.   which is not otherwise here provided.

108.   As of the date of this Purchase Agreement, Seller represents that Seller ☐ HAS ☒ HAS NOT received a notice
       ------------------(Check one.)------------------
109.   regarding any new improvement project from any assessing authorities, the costs of which project may be assessed
110.   against the Property. Any such notice received by Seller after the date of this Purchase Agreement and before closing
111.   shall be provided to Buyer immediately. If such notice is issued after the date of this Purchase Agreement and on
112.   or before the date of closing, then the parties may agree in writing, on or before the date of closing, to pay, provide
113.   for the payment of, or assume the special assessments. In the absence of such agreement, either party may declare
114.   this Purchase Agreement canceled by written notice to the other party, or licensee representing or assisting the other
115.   party, in which case this Purchase Agreement is canceled. If either party declares this Purchase Agreement canceled,
116.   Buyer and Seller shall immediately sign a *Cancellation of Purchase Agreement* confirming said cancellation and
117.   directing all earnest money paid here to be refunded to Buyer.

118.   **POSSESSION:** Seller shall deliver possession of the Property: *(Check one.)*
119.   ☒ **IMMEDIATELY AFTER CLOSING; or**

120.   ☐ **OTHER:** _____ .
121.   Seller agrees to remove ALL DEBRIS AND ALL PERSONAL PROPERTY NOT INCLUDED HERE from the Property
122.   by possession date.

123.   **LINKED DEVICES:** Seller warrants that Seller shall permanently disconnect or discontinue Seller's access or service
124.   to any device or system on or serving the property that is connected or controlled wirelessly, via internet protocol ("IP")
125.   to a router or gateway or directly to the cloud no later than delivery of possession as specified in this Purchase
126.   Agreement.

127.   **PRORATIONS:** All interest; unit owners' association dues; rents; and charges for city water, city sewer, electricity, and
128.   natural gas shall be prorated between the parties as of date of closing. Buyer shall pay Seller for remaining gallons of
129.   fuel oil or liquid petroleum gas on the day of closing, at the rate of the last fill by Seller.

130.   **TITLE AND EXAMINATION:** As quickly as reasonably possible after Final Acceptance Date of this Purchase Agreement:
131.       (a)   Seller shall deliver any abstract of title and a copy of any owner's title insurance policy for the Property, if
132.             in Seller's possession or control, to Buyer or Buyer's designated title service provider. Any abstract of title or
133.             owner's title insurance policy provided shall be immediately returned to Seller, or licensee representing or
134.             assisting Seller, upon cancellation of this Purchase Agreement; and
135.       (b)   Buyer shall obtain the title services determined necessary or desirable by Buyer or Buyer's lender, including
136.             but not limited to title searches, title examinations, abstracting, a title insurance commitment, or an attorney's
137.             title opinion at Buyer's selection and cost and provide a copy to Seller.

MN:PA-3 (8/16)

Instanetᶠᴼᴿᴹˢ

USAProd-00010178

**PURCHASE AGREEMENT**

138. Page 4   Date _____01/19/2017_____

139. Property located at __5085  Greenwood Cir_____

Greenwood      MN    55331 .

140. Seller shall use Seller's best efforts to provide marketable title by the date of closing. Seller agrees to pay all costs
141. and fees necessary to convey marketable title including obtaining and recording all required documents, subject to the
142. following:

143.   In the event Seller has not provided marketable title by the date of closing, Seller shall have an additional 30 days to
144.   make title marketable, or in the alternative, Buyer may waive title defects by written notice to Seller. In addition to
145.   the 30-day extension, Buyer and Seller may, by mutual agreement, further extend the closing date. Lacking such
146.   extension, either party may declare this Purchase Agreement canceled by written notice to the other party, or
147.   licensee representing or assisting the other party, in which case this Purchase Agreement is canceled. If either
148.   party declares this Purchase Agreement canceled, Buyer and Seller shall immediately sign a *Cancellation of*
149.   *Purchase Agreement* confirming said cancellation and directing all earnest money paid here to be refunded to
150.   Buyer.

151. **SUBDIVISION OF LAND, BOUNDARIES, AND ACCESS:** If this sale constitutes or requires a subdivision of land
152. owned by Seller, Seller shall pay all subdivision expenses and obtain all necessary governmental approvals. Seller
153. warrants that the legal description of the real property to be conveyed has been or shall be approved for recording as
154. of the date of closing. Seller warrants that the buildings are or shall be constructed entirely within the boundary lines
155. of the Property. Seller warrants that there is a right of access to the Property from a public right-of-way.

156. **MECHANIC'S LIENS:** Seller warrants that prior to the closing, payment in full will have been made for all labor, materials,
157. machinery, fixtures, or tools furnished within the 120 days immediately preceding the closing in connection with
158. construction, alteration, or repair of any structure on, or improvement to, the Property.

159. **NOTICES:** Seller warrants that Seller has not received any notice from any governmental authority as to condemnation
160. proceedings, or violation of any law, ordinance, or regulation. If the Property is subject to restrictive covenants, Seller
161. warrants that Seller has not received any notice from any person or authority as to a breach of the covenants. Any
162. such notices received by Seller shall be provided to Buyer immediately.

163. **DIMENSIONS:** Buyer acknowledges any dimensions, square footage, or acreage of land or improvements provided
164. by Seller, third party, or broker representing or assisting Seller are approximate. Buyer shall verify the accuracy of
165. information to Buyer's satisfaction, if material, at Buyer's sole cost and expense.

166. **ACCESS AGREEMENT:** Seller agrees to allow reasonable access to the Property for performance of any surveys or
167. inspections agreed to here.

168. **RISK OF LOSS:** If there is any loss or damage to the Property between the Final Acceptance Date and the date of
169. closing for any reason, including fire, vandalism, flood, earthquake, or act of God, the risk of loss shall be on Seller. If
170. the Property is destroyed or substantially damaged before the closing date, this Purchase Agreement is canceled,
171. at Buyer's option, by written notice to Seller or licensee representing or assisting Seller. If Buyer cancels this Purchase
172. Agreement, Buyer and Seller shall immediately sign a *Cancellation of Purchase Agreement* confirming said cancellation
173. and directing all earnest money paid here to be refunded to Buyer.

174. **TIME OF ESSENCE:** Time is of the essence in this Purchase Agreement.

175. **CALCULATION OF DAYS:** Any calculation of days begins on the first day (calendar or Business Days as specified)
176. following the occurrence of the event specified and includes subsequent days (calendar or Business Days as specified)
177. ending at 11:59 P.M. on the last day.

178. **BUSINESS DAYS:** "Business Days" are days which are not Saturdays, Sundays, or state or federal holidays unless
179. stated elsewhere by the parties in writing.

180. **RELEASE OF EARNEST MONEY:** Buyer and Seller agree that the listing broker shall release earnest money from the
181. listing broker's trust account:
182.   (a) at or upon the successful closing of the Property;
183.   (b) pursuant to written agreement between the parties, which may be reflected in a *Cancellation of Purchase*
184.   *Agreement* executed by both Buyer and Seller;
185.   (c) upon receipt of an affidavit of a cancellation under MN Statute 559.217; or
186.   (d) upon receipt of a court order.

MN:PA-4 (8/16)

Instanet FORMS

**PURCHASE AGREEMENT**

187. Page 5    Date ........ 01/19/2017 ..........

188. Property located at ___5085 Greenwood Cir___  ___Greenwood___  ___MN___  ___55331___

189. **DEFAULT:** If Buyer defaults in any of the agreements here, Seller may cancel this Purchase Agreement, and any
190. payments made here, including earnest money, shall be retained by Seller as liquidated damages and Buyer and Seller
191. shall affirm the same by a written cancellation agreement.

192. If Buyer defaults in any of the agreements here, Seller may terminate this Purchase Agreement under the provisions
193. of either MN Statute 559.21 or MN Statute 559.217, whichever is applicable. If either Buyer or Seller defaults in any
194. of the agreements here or there exists an unfulfilled condition after the date specified for fulfillment, either party may
195. cancel this Purchase Agreement under MN Statute 559.217, Subd. 3. Whenever it is provided here that this Purchase
196. Agreement is canceled, said language shall be deemed a provision authorizing a Declaratory Cancellation under MN
197. Statute 559.217, Subd. 4.

198. If this Purchase Agreement is not canceled or terminated as provided here, Buyer or Seller may seek actual damages
199. for breach of this Purchase Agreement or specific performance of this Purchase Agreement; and, as to specific
200. performance, such action must be commenced within six (6) months after such right of action arises.

201. **NOTICE REGARDING PREDATORY OFFENDER INFORMATION:** Information regarding the predatory offender
202. registry and persons registered with the predatory offender registry under MN Statute 243.166 may be obtained
203. by contacting the local law enforcement offices in the community where the Property is located or the Minnesota
204. Department of Corrections at (651) 361-7200, or from the Department of Corrections web site at
205. www.corr.state.mn.us.

---

206. **BUYER HAS THE RIGHT TO A WALK-THROUGH REVIEW OF THE PROPERTY PRIOR TO CLOSING TO**
207. **ESTABLISH THAT THE PROPERTY IS IN SUBSTANTIALLY THE SAME CONDITION AS OF THE DATE OF**
208. **THIS PURCHASE AGREEMENT.**

209. BUYER HAS RECEIVED A: *(Check any that apply.)* ☐ *DISCLOSURE STATEMENT: SELLER'S PROPERTY*
210. *DISCLOSURE STATEMENT* OR A ☒ *DISCLOSURE STATEMENT: SELLER'S DISCLOSURE ALTERNATIVES* FORM.

211. **DESCRIPTION OF PROPERTY CONDITION:** See *Disclosure Statement: Seller's Property Disclosure Statement* or
212. *Disclosure Statement: Seller's Disclosure Alternatives* for description of disclosure responsibilities and limitations, if
213. any.

214. **BUYER HAS RECEIVED THE INSPECTION REPORTS, IF REQUIRED BY MUNICIPALITY.**

215. **BUYER IS NOT RELYING ON ANY ORAL REPRESENTATIONS REGARDING THE CONDITION OF THE PROPERTY**
216. **AND ITS CONTENTS.**

---

217. *(Check appropriate boxes.)*
218. SELLER WARRANTS THAT THE PROPERTY IS EITHER DIRECTLY OR INDIRECTLY CONNECTED TO:
219. **CITY SEWER** ☒ YES ☐ NO / **CITY WATER** ☒ YES ☐ NO

220. **SUBSURFACE SEWAGE TREATMENT SYSTEM**
221. SELLER ☐ DOES ☒ DOES NOT KNOW OF A SUBSURFACE SEWAGE TREATMENT SYSTEM ON OR
         ··············(Check one.)··············
222. SERVING THE PROPERTY.  (If answer is DOES, and the system does not require a state permit, see *Disclosure*
223. *Statement: Subsurface Sewage Treatment System.)*

224. **PRIVATE WELL**
225. SELLER ☒ DOES ☐ DOES NOT KNOW OF A WELL ON OR SERVING THE PROPERTY.
         ··············(Check one.)··············
226. (If answer is DOES and well is located on the Property, see *Disclosure Statement: Well.)*

227. THIS PURCHASE AGREEMENT ☐ IS ☒ IS NOT SUBJECT TO AN *ADDENDUM TO PURCHASE AGREEMENT:*
         ··············(Check one.)··············
228. *SUBSURFACE SEWAGE TREATMENT SYSTEM AND WELL INSPECTION CONTINGENCY.*
229. (If answer is IS, see attached *Addendum.)*

230. **IF A WELL OR SUBSURFACE SEWAGE TREATMENT SYSTEM EXISTS ON THE PROPERTY, BUYER HAS**
231. **RECEIVED A** *DISCLOSURE STATEMENT: WELL* **AND/OR A** *DISCLOSURE STATEMENT: SUBSURFACE SEWAGE*
232. *TREATMENT SYSTEM.*

MN:PA-5 (8/16)

Instanet

## PURCHASE AGREEMENT

233. Page 6     Date _____01/19/2017_____

234. Property located at _5085 Greenwood Cir_     Greenwood     MN     55331

235. **HOME PROTECTION/WARRANTY PLAN:** Buyer and Seller are advised to investigate the various home protection/
236. warranty plans available for purchase. Different home protection/warranty plans have different coverage options,
237. exclusions, limitations, and service fees. Most plans exclude pre-existing conditions. *(Check one.)*

238. ☐ A Home Protection/Warranty Plan will be obtained by ☐ **BUYER** ☐ **SELLER** and paid for by
     ----------------*(Check one.)*----------------

239. ☐ **BUYER** ☐ **SELLER** to be issued by _____ at a cost
     ----------*(Check one.)*----------

240. not to exceed $ _____ .

241. ☒ No Home Protection/Warranty Plan is negotiated as part of this Purchase Agreement. However, Buyer may elect
242. to purchase a Home Protection/Warranty Plan.

---

243.                                    **NOTICE**

244. _____     is ☐ Seller's Agent ☐ Buyer's Agent ☐ Dual Agent ☐ Facilitator.
         (Licensee)                    ---------------------*(Check one.)*--------------------

245. _____
     (Real Estate Company Name)

246. _____     is ☐ Seller's Agent ☐ Buyer's Agent ☐ Dual Agent ☐ Facilitator.
         (Licensee)                    ---------------------*(Check one.)*--------------------

247. _____
     (Real Estate Company Name)

248. **THIS NOTICE DOES <u>NOT</u> SATISFY MINNESOTA STATUTORY AGENCY DISCLOSURE REQUIREMENTS.**

---

249.                          **DUAL AGENCY REPRESENTATION**

250. **PLEASE CHECK <u>ONE</u> OF THE FOLLOWING SELECTIONS:**

251. ☐ Dual Agency representation *DOES NOT* apply in this transaction. *Do not complete lines 252-268.*

252. ☐ Dual Agency representation *DOES* apply in this transaction. *Complete the disclosure in lines 253-268.*

253. Broker represents both the Seller(s) and the Buyer(s) of the Property involved in this transaction, which creates a
254. dual agency. This means that Broker and its salespersons owe fiduciary duties to both Seller(s) and Buyer(s). Because
255. the parties may have conflicting interests, Broker and its salespersons are prohibited from advocating exclusively for
256. either party. Broker cannot act as a dual agent in this transaction without the consent of both Seller(s) and Buyer(s).
257. Seller(s) and Buyer(s) acknowledge that
258.    (1) confidential information communicated to Broker which regards price, terms, or motivation to buy or sell will
259.       remain confidential unless Seller(s) or Buyer(s) instructs Broker in writing to disclose this information. Other
260.       information will be shared;
261.    (2) Broker and its salespersons will not represent the interest of either party to the detriment of the other; and
262.    (3) within the limits of dual agency, Broker and its salespersons will work diligently to facilitate the mechanics of
263.       the sale.

264. With the knowledge and understanding of the explanation above, Seller(s) and Buyer(s) authorize and instruct Broker
265. and its salesperson to act as dual agents in this transaction.

266. Seller _____     Buyer _____

267. Seller _____     Buyer _____

268. Date _____     Date _____

---

269. **CLOSING COSTS:** Buyer or Seller may be required to pay certain closing costs, which may effectively increase the
270. cash outlay at closing or reduce the proceeds from the sale.

MN:PA-6 (8/16)

InstanetFORMS

**PURCHASE AGREEMENT**

271. Page 7    Date _____ 01/19/2017 _____

272. Property located at __5085 Greenwood Cir_____ Greenwood    MN    55331 .

273. **SETTLEMENT STATEMENT:** Buyer and Seller authorize the title company, escrow agent, and/or their representatives
274. to disclose and provide copies of the disbursing agent's settlement statement to the real estate licensees involved in
275. the transaction at the time these documents are provided to Buyer and Seller.

276. **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Section 1445 of the Internal Revenue Code
277. provides that a transferee ("Buyer") of a United States real property interest must be notified in writing and must withhold
278. tax if the transferor ("Seller") is a foreign person and no exceptions from FIRPTA withholding apply. Buyer and Seller
279. agree to comply with FIRPTA requirements under Section 1445 of the Internal Revenue Code.

280. Seller shall represent and warrant, under the penalties of perjury, whether Seller is a "foreign person" (as the same
281. is defined within FIRPTA), prior to closing. Any representations made by Seller with respect to this issue shall survive
282. the closing and delivery of the deed.

283. Buyer and Seller shall complete, execute, and deliver, on or before closing, any instrument, affidavit, or statement
284. reasonably necessary to comply with the FIRPTA requirements, including delivery of their respective federal taxpayer
285. identification numbers or Social Security numbers.

286. Due to the complexity and potential risks of failing to comply with FIRPTA, including the Buyer's responsibility for
287. withholding the applicable tax, Buyer and Seller should seek appropriate legal and tax advice regarding FIRPTA
288. compliance, as the respective licensee's representing or assisting either party will be unable to assure either
289. party whether the transaction is exempt from FIRPTA withholding requirements.

290. **ENTIRE AGREEMENT:** This Purchase Agreement and any addenda or amendments signed by the parties shall
291. constitute the entire agreement between Buyer and Seller. Any other written or oral communication between Buyer and
292. Seller, including, but not limited to, e-mails, text messages, or other electronic communications are not part of this
293. Purchase Agreement. This Purchase Agreement can be modified or canceled only in writing signed by Seller and
294. Buyer or by operation of law. All monetary sums are deemed to be United States currency for purposes of this Purchase
295. Agreement.

296. **ELECTRONIC SIGNATURES:** The parties agree the electronic signature of any party on any document related to this
297. transaction constitute valid, binding signatures.

298. **FINAL ACCEPTANCE:** To be binding, this Purchase Agreement must be fully executed by both parties and a copy
299. must be delivered.

300. **SURVIVAL:** All warranties specified in this Purchase Agreement shall survive the delivery of the deed or contract
301. for deed.

302. **OTHER:**

303. _____

304. _____

305. _____

306. _____

307. _____

308. _____

309. _____

310. **ADDENDA AND PAGE NUMBERING:** Attached addenda are a part of this Purchase Agreement.
311. Enter total number of pages of this Purchase Agreement, including addenda, on line two (2) of page one (1).

312. **NOTE: Disclosures and optional Arbitration Agreement are not part of this Purchase Agreement and should**
313. **not be part of the page numbering.**

MN:PA-7 (8/16)

InstanetFORMS

USAProd-00010182

PURCHASE AGREEMENT

314. Page 8   Date _____ 01/19/2017

315. Property located at  5005  Greenwood Cir _____ Greenwood ____ MN  55331

316. I, the owner of the Property, accept this Purchase
317. Agreement and authorize the listing broker to withdraw
318. said Property from the market, unless instructed
319. otherwise in writing.
320. I have reviewed all pages of this Purchase Agreement.

I agree to purchase the Property for the price and on
the terms and conditions set forth above
I have reviewed all pages of this Purchase
Agreement.

321. ☐ If checked, this Agreement is subject to attached
322.     Addendum to Purchase Agreement: Counteroffer.

323. FIRPTA: Seller represents and warrants, under penalty
324. of perjury, that Seller ☐ IS ☒ IS NOT a foreign person (i.e., a
                                    (Check one)
325. non-resident alien individual, foreign corporation, foreign
326. partnership, foreign trust, or foreign estate for purposes of
327. income taxation. (See lines 276-289.)) This representation
328. and warranty shall survive the closing of the transaction
329. and the delivery of the deed.

330. X _____  2/7/17
         (Seller's Signature)            (Date)

       SOBSGG, LLC  a MN LLC
331. X _Duane Lund, its Manager_
         (Seller's Printed Name)

332. X _____
         (Marital Status)

333. X _____
         (Seller's Signature)            (Date)

334. X _____
         (Seller's Printed Name)

335. X _____
         (Marital Status)

X _____  02/28/2017
   (Buyer's Signature)              (Date)
   By: United International Trust N.V.
   Managing Director
   (Buyer's Printed Name)

X _____
   (Marital Status)

X _____
   (Buyer's Signature)            (Date)

X _____
   (Buyer's Printed Name)

X _____
   (Marital Status)

336. FINAL ACCEPTANCE DATE: _____ The Final Acceptance Date
337. is the date on which the fully executed Purchase Agreement is delivered.

338.           THIS IS A LEGALLY BINDING CONTRACT BETWEEN BUYER(S) AND SELLER(S).
339.       IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

340. I ACKNOWLEDGE THAT I HAVE RECEIVED AND HAVE HAD THE OPPORTUNITY TO REVIEW THE *DISCLOSURE*
341. *STATEMENT: ARBITRATION DISCLOSURE AND RESIDENTIAL REAL PROPERTY ARBITRATION AGREEMENT,*
342. WHICH IS AN OPTIONAL, VOLUNTARY AGREEMENT AND IS NOT PART OF THIS PURCHASE AGREEMENT.

343. SELLER(S) _____     BUYER(S) _____
                                           By: United International Trust N.V.
344. SELLER(S) _____     BUYER(S) __Managing Director__

MN:PA-8 (8/16)

Instanetforms

## DISCLOSURE STATEMENT: ARBITRATION DISCLOSURE AND RESIDENTIAL REAL PROPERTY ARBITRATION AGREEMENT

This form approved by the Minnesota Association of REALTORS®, which disclaims any liability arising out of use or misuse of this form.
© 2014 Minnesota Association of REALTORS®, Edina, MN

1. Page 1

2.

### ARBITRATION DISCLOSURE

3. You have the right to choose whether to have any disputes about disclosure of material facts affecting the use
4. or enjoyment of the property that you are buying or selling decided by binding arbitration or by a court of law. By agreeing
5. to binding arbitration, **you give up your right to go to court.** By signing the RESIDENTIAL REAL PROPERTY
6. ARBITRATION AGREEMENT ("ARBITRATION AGREEMENT") on page two (2), you agree to binding arbitration under the
7. Residential Real Property Arbitration System ("Arbitration System") administered by National Center for Dispute Settlement
8. ("NCDS") and endorsed by the Minnesota Association of REALTORS® ("MNAR"). The ARBITRATION AGREEMENT is
9. enforceable only if it is signed by all buyers, sellers and licensees representing or assisting the buyers and the sellers.
10. The ARBITRATION AGREEMENT is not part of the *Purchase Agreement.* Your *Purchase Agreement* will still be
11. valid whether or not you sign the ARBITRATION AGREEMENT.

12. The Arbitration System is a private dispute resolution system offered as an alternative to the court system. It
13. is not government sponsored. NCDS and the MNAR jointly adopt the rules that govern the Arbitration System. NCDS
14. and the MNAR are not affiliated. Under the ARBITRATION AGREEMENT you must use the arbitration services of
15. NCDS.

16. All disputes about or relating to disclosure of material facts affecting the use or enjoyment of the property, excluding
17. disputes related to title issues, are subject to arbitration under the ARBITRATION AGREEMENT. This includes claims
18. of fraud, misrepresentation, warranty and negligence. Nothing in this Agreement limits other rights you may have under
19. MN Statute 327A (statutory new home warranties) or under private contracts for warranty coverage. An agreement to
20. arbitrate does not prevent a party from contacting the Minnesota Department of Commerce, the state agency that
21. regulates the real estate profession, about licensee compliance with state law.

22. The administrative fee for the Arbitration System varies depending on the amount of the claim, but it is more
23. than initial court filing fees. In some cases, conciliation court is cheaper than arbitration. The maximum claim allowed
24. in conciliation court is $15,000. This amount is subject to future change. In some cases, it is quicker and less expensive
25. to arbitrate disputes than to go to court, but the time to file your claim and pre-hearing discovery rights are limited. The
26. right to appeal an arbitrator's award is very limited compared to the right to appeal a court decision.

27. **A request for arbitration must be filed within 24 months of the date of the closing on the property or**
28. **else the claim cannot be pursued. In some cases of fraud, a court or arbitrator may extend the 24-month**
29. **limitation period provided herein.**

30. A party who wants to arbitrate a dispute files a Demand, along with the appropriate administrative fee, with
31. NCDS. NCDS notifies the other party, who may file a response. NCDS works with the parties to select and appoint an arbitrator
32. to hear and decide the dispute. A three-arbitrator panel will be appointed instead of a single arbitrator at the request
33. of any party. The party requesting a panel must pay an additional fee. Arbitrators have backgrounds in law, real estate,
34. architecture, engineering, construction or other related fields.

35. Arbitration hearings are usually held at the home site. Parties are notified about the hearing at least 14 days
36. in advance. A party may be represented by a lawyer at the hearing, at the party's own expense, if he or she gives five
37. (5) days advance notice to the other party and to NCDS. Each party may present evidence, including documents or
38. testimony by witnesses. The arbitrator must make any award within 30 days from the final hearing date. The award must
39. be in writing and may provide any remedy the arbitrator considers just and equitable that is within the scope of the
40. parties' agreement. The arbitrator does not have to make findings of fact that explain the reason for granting or denying
41. an award. The arbitrator may require the party who does not prevail to pay the administrative fee.

42. This Arbitration Disclosure provides only a general description of the Arbitration System and a general
43. overview of the Arbitration System rules. For specific information regarding the administrative fee, please see the
44. Fee Schedule located in the NCDS Rules. Copies of the Arbitration System rules are available from NCDS by calling
45. (866) 777-8119 or (866) 727-8119 or on the Web at www.ncdsusa.org or from your REALTOR®. If you have any questions
46. about arbitration, call NCDS at (866) 777-8119 or (866) 727-8119 or consult a lawyer.

Instanet FORMS

DISCLOSURE STATEMENT: ARBITRATION
DISCLOSURE AND RESIDENTIAL REAL
PROPERTY ARBITRATION AGREEMENT
47. Page 2

48. **THIS IS AN OPTIONAL, VOLUNTARY AGREEMENT.**
49. **READ THE ARBITRATION DISCLOSURE ON PAGE ONE (1) IN FULL BEFORE SIGNING.**

50. **RESIDENTIAL REAL PROPERTY ARBITRATION AGREEMENT**

51. For the property located at ____ 6005 ___ Greenwood Cir _____ .

52. City of _____ Greenwood _____ , County of _____ Hennepin _____ , State of Minnesota.

53. Any dispute between the undersigned parties, or any of them, about or relating to material facts affecting the use or
54. enjoyment of the property, excluding disputes related to title issues of the property covered by the *Purchase Agreement*
55. dated _____ January ___ 19th __ , 20 17 _____ , including claims of fraud, misrepresentation, warranty and
56. negligence, shall be settled by binding arbitration. National Center for Dispute Settlement shall be the arbitration service
57. provider. The rules adopted by National Center for Dispute Settlement and the Minnesota Association of REALTORS®
58. shall govern the proceeding(s). The rules that shall govern the proceeding(s) are those rules in effect at the time the
59. Demand for Arbitration is filed and include the rules specified in the Arbitration Disclosure on page one (1). This
60. Agreement shall survive the delivery of the deed or contract for deed in the *Purchase Agreement*. This Agreement is
61. only enforceable if all buyers, sellers and licensees representing or assisting the buyers and sellers have agreed to
62. arbitrate as acknowledged by signatures below. For purposes of this Agreement, the signature of one licensee of a
63. broker shall bind the broker and all licensees of that broker.

64.
_____ 2/7/17 _____
(Seller's Signature)                        (Date)

02/28/2017

By: **United International Trust N.V.**
(Buyer's Signature)                        (Date)

65. SOBSGC, LLC, a MN LLC
Duane Lund, VP Manager
(Seller's Printed Name)

**Managing Director**
(Buyer's Printed Name)

66.
_____ _____
(Seller's Signature)                        (Date)

_____ _____
(Buyer's Signature)                        (Date)

67.
_____
(Seller's Printed Name)

_____
(Buyer's Printed Name)

68.
_____ _____
(Licensee Representing or Assisting Seller)   (Date)

_____ _____
(Licensee Representing or Assisting Buyer)   (Date)

69.
_____
(Company Name)

_____
(Company Name)

70. **THE RESIDENTIAL REAL PROPERTY ARBITRATION AGREEMENT IS A LEGALLY BINDING CONTRACT**
71. **BETWEEN BUYERS, SELLERS AND LICENSEES. IF YOU DESIRE LEGAL ADVICE, CONSULT A LAWYER.**

MN:DS-ADRAA-2 (8/14)

Instanet...

**DISCLOSURE STATEMENT:**
**SELLER'S DISCLOSURE ALTERNATIVES**
This form approved by the Minnesota Association of REALTORS®,
which disclaims any liability arising out of use or misuse of this form.
© 2016 Minnesota Association of REALTORS®, Edina, MN

1. Date _____ **01/19/2017** _____

2. Page 1 of _____ pages: RECORDS AND
3. REPORTS, IF ANY, ARE ATTACHED AND MADE A
4. PART OF THIS DISCLOSURE

5. Property located at ___**5085     Greenwood Circle**_____

6. City of _____**Greenwood**_____ , County of _____**Hennepin**_____ , State of Minnesota.

7. **NOTICE:** Sellers of residential property, with limited exceptions, are obligated to satisfy the requirements of MN Statutes
8. 513.52 through 513.60. **To comply with the statute, Seller must provide either a written disclosure to the**
9. **prospective Buyer (see *Disclosure Statement: Seller's Property Disclosure Statement*) or satisfy one of the**
10. following two options. Disclosures made here, if any, are not a warranty or guarantee of any kind by Seller or
11. licensee(s) representing or assisting any party in this transaction and are not a substitute for any inspections or
12. warranties the party(ies) may wish to obtain.

13. *(Select one option only.)*

14. 1) ☐ **QUALIFIED THIRD-PARTY INSPECTION:** Seller shall provide to prospective Buyer a written report that
15.    discloses material information relating to the real property that has been prepared by a qualified third party.
16.    "Qualified third party" means a federal, state, or local governmental agency, or any person whom Seller or
17.    prospective Buyer reasonably believes has the expertise necessary to meet the industry standards of practice
18.    for the type of inspection or investigation that has been conducted by the third party in order to prepare the
19.    written report.

20.    **Seller shall disclose to prospective Buyer material facts known by Seller that contradict any information**
21.    **that is included in a written report, or material facts known by Seller that are not included in the**
22.    **report.**

23.    The inspection report was prepared by . _____
24.    _____
25.    and dated _____ , 20 _____ .

26.    Seller discloses to Buyer the following material facts known by Seller that contradict any information included
27.    in the above referenced inspection report.

28.    _____
29.    _____
30.    _____

31.    Seller discloses to Buyer the following material facts known by Seller that are not included in the above
32.    referenced inspection report.

33.    _____
34.    _____
35.    _____

36. 2) ☒ **WAIVER:** The written disclosure required may be waived if Seller and prospective Buyer agree in writing. Seller
37.    and Buyer hereby waive the written disclosure required under MN Statutes 513.52 through 513.60.

38.    **NOTE:** If both Seller and prospective Buyer agree, in writing, to waive the written disclosure required under
39.    MN Statutes 513.52 through 513.60, Seller is not obligated to disclose ANY material facts of which Seller
40.    is aware that could adversely and significantly affect the Buyer's use or enjoyment of the property or any
41.    intended use of the property, other than those disclosure requirements created by any other law. Seller is
42.    not obligated to update Buyer on any changes made to material facts of which Seller is aware that could
43.    adversely and significantly affect the Buyer's use or enjoyment of the property or any intended use of the
44.    property that occur, other than those disclosure requirements created by any other law.

45.    **Waiver of the disclosure required under MN Statutes 513.52 through 513.60 does not waive, limit, or**
46.    **abridge any obligation for Seller disclosure created by any other law.**

MN:DS:SDA-1 (8/16)

Instanet FORMS

USAProd-00010186

**DISCLOSURE STATEMENT:**
**SELLER'S DISCLOSURE ALTERNATIVES**

47.    Page 2

48. Property located at  5085  Greenwood Circle                    Greenwood                    .

49. **OTHER REQUIRED DISCLOSURES:**

50. **NOTE:**    In addition to electing one of the above alternatives to the material fact disclosure, Minnesota law also
51.    requires sellers to provide other disclosures to prospective buyers, such as those disclosures listed below.
52.    Additionally, there may be other required disclosures by federal, state, local, or other governmental entities
53.    that are not listed below.

54. **A. SUBSURFACE SEWAGE TREATMENT SYSTEM DISCLOSURE:** (A subsurface sewage treatment system
55.    disclosure is required by MN Statute 115.55.) *(Check appropriate box.)*

56.    Seller certifies that Seller ☐ DOES ☒ DOES NOT know of a subsurface sewage treatment system on or serving
57.    the above-described real property. (If answer is DOES, and the system does not require a state permit, see
58.    *Disclosure Statement: Subsurface Sewage Treatment System.*)

59.    ☐ There is a subsurface sewage treatment system on or serving the above-described real property.
60.        *(See Disclosure Statement: Subsurface Sewage Treatment System.)*
61.    ☐ There is an abandoned subsurface sewage treatment system on the above-described real property.
62.        *(See Disclosure Statement: Subsurface Sewage Treatment System.)*

63. **B. PRIVATE WELL DISCLOSURE:** (A well disclosure and Certificate are required by MN Statute 103I.235.)
64.    *(Check appropriate box.)*

65.    ☐ Seller certifies that Seller does not know of any wells on the above-described real property.
66.    ☒ Seller certifies there are one or more wells located on the above-described real property.
67.        *(See Disclosure Statement: Well.)*

68.    Are there any wells serving the above-described property that are not located on the property?   ☐ Yes ☒ No
69.    To your knowledge, is the property in a Special Well Construction Area?   ☐ Yes ☒ No

70.    Comments: _____
71.    _____

72. **C. VALUATION EXCLUSION DISCLOSURE:** (Required by MN Statute 273.11, Subd. 18)
73.    There ☐ IS ☒ IS NOT an exclusion from market value for home improvements on this property. Any valuation
74.    exclusion shall terminate upon sale of the property, and the property's estimated market value for property tax purposes
75.    shall increase. If a valuation exclusion exists, Buyers are encouraged to look into the resulting tax
76.    consequences.

77.    Additional comments: _____
78.    _____

79. **D. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Section 1445 of the Internal Revenue Code
80.    provides that a transferee ("Buyer") of a United States real property interest must be notified in writing and must
81.    withhold tax if the transferor ("Seller") is a foreign person and no exceptions from FIRPTA withholding apply.

82.    Seller represents that Seller ☐ IS ☒ IS NOT a foreign person (i.e., a non-resident alien individual, foreign corporation,
83.    foreign partnership, foreign trust, or foreign estate) for purposes of income taxation. This representation shall
84.    survive the closing of any transaction involving the property described here.

85. **NOTE:**    If the above answer is "IS," Buyer may be subject to income tax withholding in connection with the
86.        transaction (unless the transaction is covered by an applicable exception to FIRPTA withholding). In
87.        non-exempt transactions, Buyer may be liable for the tax if Buyer fails to withhold.
88.        If the above answer is "IS NOT," Buyer may wish to obtain specific documentation from Seller ensuring
89.        Buyer is exempt from the withholding requirements as prescribed under Section 1445 of the Internal
90.        Revenue Code.

91.    Due to the complexity and potential risks of failing to comply with FIRPTA, including Buyer's responsibility
92.    for withholding the applicable tax, Buyer and Seller should seek **appropriate legal and tax advice regarding**
93.    **FIRPTA compliance,** as the respective licensees representing or assisting either party will be unable to
94.    assure either party whether the transaction is exempt from the FIRPTA withholding requirements.

MN:DS:SDA-2 (8/16)                                                                Instanet

**DISCLOSURE STATEMENT:**
**SELLER'S DISCLOSURE ALTERNATIVES**

95.     Page 3

96.     Property located at __5085  Greenwood Circle__                                      Greenwood                          .

97.  **E.  METHAMPHETAMINE PRODUCTION DISCLOSURE:**
98.       (A methamphetamine production disclosure is required by MN Statute 152.0275, Subd. 2 (m).)
99.       ☒ Seller is not aware of any methamphetamine production that has occurred on the property.
100.      ☐ Seller is aware that methamphetamine production has occurred on the property.
101.          *(See Disclosure Statement: Methamphetamine Production.)*

102.  **F.  RADON DISCLOSURE:**
103.       (The following Seller disclosure satisfies MN Statute 144.496.)

104.      **RADON WARNING STATEMENT:** The Minnesota Department of Health strongly recommends that ALL
105.      homebuyers have an indoor radon test performed prior to purchase or taking occupancy, and recommends having
106.      the radon levels mitigated if elevated radon concentrations are found. Elevated radon concentrations can easily
107.      be reduced by a qualified, certified, or licensed, if applicable, radon mitigator.

108.      Every buyer of any interest in residential real property is notified that the property may present exposure to
109.      dangerous levels of indoor radon gas that may place occupants at risk of developing radon-induced lung cancer.
110.      Radon, a Class A human carcinogen, is the leading cause of lung cancer in nonsmokers and the second leading
111.      cause overall. The seller of any interest in residential real property is required to provide the buyer with any
112.      information on radon test results of the dwelling.

113.      **RADON IN REAL ESTATE:** By signing this Statement, Buyer hereby acknowledges receipt of the Minnesota
114.      Department of Health's publication entitled *Radon in Real Estate Transactions*, which is attached hereto and
115.      can be found at www.health.state.mn.us/divs/eh/indoorair/radon/rnrealestateweb.pdf.

116.      A seller who fails to disclose the information required under MN Statute 144.496, and is aware of material facts
117.      pertaining to radon concentrations in the property, is liable to the Buyer. A buyer who is injured by a violation of MN
118.      Statute 144.496 may bring a civil action and recover damages and receive other equitable relief as determined by
119.      the court. Any such action must be commenced within two years after the date on which the buyer closed the
120.      purchase or transfer of the real property.

121.      **SELLER'S REPRESENTATIONS:** The following are representations made by Seller to the extent of Seller's actual
122.      knowledge.

123.          (a) Radon test(s) ☐ HAVE ☒ HAVE NOT occurred on the property.
                  ----*(Check one.)*----

124.          (b) Describe any known radon concentrations, mitigation, or remediation. **NOTE:** *Seller shall attach the most*
125.              *current records and reports pertaining to radon concentration within the dwelling:*

126.          _____

127.          _____

128.          _____

129.          (c) There ☐ IS ☒ IS NOT a radon mitigation system currently installed on the property.
                  ----*(Check one.)*----

130.              If "IS," Seller shall disclose, if known, information regarding the radon mitigation system, including system
131.              description and documentation.

132.          _____

133.          _____

134.          _____

135.  **G.  NOTICE REGARDING AIRPORT ZONING REGULATIONS:** The property may be in or near an airport safety zone
136.       with zoning regulations adopted by the governing body that may affect the property. Such zoning regulations are
137.       filed with the county recorder in each county where the zoned area is located. If you would like to determine if such
138.       zoning regulations affect the property, you should contact the county recorder where the zoned area is located.

MN:DS:SDA-3 (8/16)

Instanet*FORMS*

USAProd-00010188

DISCLOSURE STATEMENT:
SELLER'S DISCLOSURE ALTERNATIVES
139.  Page 4

140.  Property located at __5085  Greenwood Circle__ __Greenwood__ .

141.  **H. NOTICE REGARDING CARBON MONOXIDE DETECTORS:**
142.  MN Statute 299F.51 requires Carbon Monoxide Detectors to be located within ten (10) feet from all sleeping
143.  rooms. Carbon Monoxide Detectors may or may not be personal property and may or may not be included in the
144.  sale of the home.

145.  **I. WATER INTRUSION AND MOLD GROWTH:** Studies have shown that various forms of water intrusion affect many
146.  homes. Water intrusion may occur from exterior moisture entering the home and/or interior moisture leaving the
147.  home.

148.  Examples of exterior moisture sources may be
149.     • improper flashing around windows and doors,
150.     • improper grading,
151.     • flooding,
152.     • roof leaks.

153.  Examples of interior moisture sources may be
154.     • plumbing leaks,
155.     • condensation (caused by indoor humidity that is too high or surfaces that are too cold),
156.     • overflow from tubs, sinks, or toilets,
157.     • firewood stored indoors,
158.     • humidifier use,
159.     • inadequate venting of kitchen and bath humidity,
160.     • improper venting of clothes dryer exhaust outdoors (including electrical dryers),
161.     • line-drying laundry indoors,
162.     • houseplants—watering them can generate large amounts of moisture.

163.  In addition to the possible structural damage water intrusion may do to the property, water intrusion may also result
164.  in the growth of mold, mildew, and other fungi. Mold growth may also cause structural damage to the property.
165.  Therefore, it is very important to detect and remediate water intrusion problems.

166.  Fungi are present everywhere in our environment, both indoors and outdoors. Many molds are beneficial to humans.
167.  However, molds have the ability to produce mycotoxins that may have a potential to cause serious health problems,
168.  particularly in some immunocompromised individuals and people who have asthma or allergies to mold.

169.  To complicate matters, mold growth is often difficult to detect, as it frequently grows within the wall structure. If you
170.  have a concern about water intrusion or the resulting mold/mildew/fungi growth, you may want to consider having
171.  the property inspected for moisture problems before entering into a purchase agreement or as a condition of your
172.  purchase agreement. Such an analysis is particularly advisable if you observe staining or any musty odors on the
173.  property.

174.  **J. NOTICE REGARDING PREDATORY OFFENDER INFORMATION:** Information regarding the predatory
175.  offender registry and persons registered with the predatory offender registry under MN Statute 243.166
176.  may be obtained by contacting the local law enforcement offices in the community where the property is
177.  located or the Minnesota Department of Corrections at (651) 361-7200, or from the Department of Corrections
178.  web site at www.corr.state.mn.us.

MN:DS-SDA-4 (8/16)

**DISCLOSURE STATEMENT:**
**SELLER'S DISCLOSURE ALTERNATIVES**
179. Page 5

180. Property located at _5095 Greenwood Circle_      Greenwood

181. K. SELLER'S STATEMENT:

182. *(To be signed at time of listing.)*
183. Seller(s) hereby authorizes any licensee(s) representing or assisting any party(ies) in this transaction to provide
184. a copy of this Disclosure Statement to any person or entity in connection with any actual or anticipated sale of the
185. property. A seller may provide this Disclosure Statement to a real estate licensee representing or assisting a
186. prospective buyer. The Disclosure Statement provided to the real estate licensee representing or assisting a
187. prospective buyer is considered to have been provided to the prospective buyer. If this Disclosure Statement is
188. provided to the real estate licensee representing or assisting the prospective buyer, the real estate licensee must
189. provide a copy to the prospective buyer.

190. QUALIFIED THIRD-PARTY INSPECTION: If Seller has made a disclosure under the Qualified Third-Party
191. Inspection, Seller is obligated to disclose to Buyer in writing of any new or changed facts of which Seller is aware
192. that could adversely and significantly affect the Buyer's use or enjoyment of the property or any intended use of
193. the property that occur up to the time of closing. To disclose new or changed facts, please use the *Amendment to*
194. *Disclosure Statement* form.

195. WAIVER: If Seller and Buyer agree to waive the seller disclosure requirement, Seller is NOT obligated to disclose
196. and will NOT disclose any new or changed information regarding facts.

197. OTHER REQUIRED DISCLOSURES (Sections A-F): Whether Seller has elected a Qualified Third Party Inspection
198. or Waiver, Seller is obligated to notify Buyer, in writing, of any new or changed facts regarding Other Required
199. Disclosures up to the time of closing. To disclose new or changed facts, please use the *Amendment to Seller's*
200. *Disclosure* form.

201. _____  2/28/17   _____
    (Seller)         (Date)        (Seller)                (Date)
    SDBSG C LLC Manager

202. L. BUYER'S ACKNOWLEDGEMENT:

203. *(To be signed at time of purchase agreement.)*
204. I/We, the Buyer(s) of the property, acknowledge receipt of this *Seller's Disclosure Alternatives* form and agree to
205. the seller's disclosure option selected in this form. I/We further agree that no representations regarding facts have
206. been made, other than those made in this form. This Disclosure Statement is not a warranty or a guarantee of
207. any kind by Seller or licensee representing or assisting any party in the transaction and is not a suitable substitute
208. for any inspections or warranties the party(ies) may wish to obtain.

209. The information disclosed is given to the best of the Seller's knowledge.

210. _____   _____
    (Buyer)         (Date)        (Buyer)               (Date)

211.      LISTING BROKER AND LICENSEES MAKE NO REPRESENTATIONS HERE AND ARE
212.      NOT RESPONSIBLE FOR ANY CONDITIONS EXISTING ON THE PROPERTY.

MN:DS:SDA-5 (8/18)

InstanetFORMS

**DISCLOSURE STATEMENT:**
**SELLER'S DISCLOSURE ALTERNATIVES**
179.  Page 5

180.  Property located at  5085  Greenwood Circle                    Greenwood

181.  **K. SELLER'S STATEMENT:**

182.  *(To be signed at time of listing.)*

183.  Seller(s) hereby authorizes any licensee(s) representing or assisting any party(ies) in this transaction to provide
184.  a copy of this Disclosure Statement to any person or entity in connection with any actual or anticipated sale of the
185.  property. A seller may provide this Disclosure Statement to a real estate licensee representing or assisting a
186.  prospective buyer. The Disclosure Statement provided to the real estate licensee representing or assisting a
187.  prospective buyer is considered to have been provided to the prospective buyer. If this Disclosure Statement is
188.  provided to the real estate licensee representing or assisting the prospective buyer, the real estate licensee must
189.  provide a copy to the prospective buyer.

190.  **QUALIFIED THIRD-PARTY INSPECTION:** If Seller has made a disclosure under the Qualified Third-Party
191.  Inspection, Seller is obligated to disclose to Buyer in writing of any new or changed facts of which Seller is aware
192.  that could adversely and significantly affect the Buyer's use or enjoyment of the property or any intended use of
193.  the property that occur up to the time of closing. To disclose new or changed facts, please use the *Amendment to*
194.  *Disclosure Statement* form.

195.  **WAIVER:** If Seller and Buyer agree to waive the seller disclosure requirement, Seller is NOT obligated to disclose
196.  and will NOT disclose any new or changed information regarding facts.

197.  **OTHER REQUIRED DISCLOSURES (Sections A-F):** Whether Seller has elected a Qualified Third Party Inspection
198.  or Waiver, Seller is obligated to notify Buyer, in writing, of any new or changed facts regarding Other Required
199.  Disclosures up to the time of closing. To disclose new or changed facts, please use the *Amendment to Seller's*
200.  *Disclosure* form.

201.  _____    _____    _____    _____
        (Seller)                                          (Date)         (Seller)                                          (Date)

202.  **L.  BUYER'S ACKNOWLEDGEMENT:**

203.  *(To be signed at time of purchase agreement.)*

204.  I/We, the Buyer(s) of the property, acknowledge receipt of this *Seller's Disclosure Alternatives* form and agree to
205.  the seller's disclosure option selected in this form. I/We further agree that no representations regarding facts have
206.  been made, other than those made in this form. This Disclosure Statement is not a warranty or a guarantee of
207.  any kind by Seller or licensee representing or assisting any party in the transaction and is not a suitable substitute
208.  for any inspections or warranties the party(ies) may wish to obtain.

209.  The information disclosed is given to the best of the Seller's knowledge.

210.  _____    _____    _____    _____
        (Buyer)                                           (Date)         (Buyer)                                           (Date)

211.  **LISTING BROKER AND LICENSEES MAKE NO REPRESENTATIONS HERE AND ARE**
212.  **NOT RESPONSIBLE FOR ANY CONDITIONS EXISTING ON THE PROPERTY.**

MN:DS:SDA-5 (8/16)

Instanet

**ADDENDUM TO PURCHASE AGREEMENT:**
**ASSUMPTION FINANCING**
This form approved by the Minnesota Association of REALTORS®,
which disclaims any liability arising out of use or misuse of this form.
© 2013 Minnesota Association of REALTORS®, Edina, MN

1. Date _____ 01/19/17

2. Page _____

3. Addendum to Purchase Agreement between parties, dated _____January_____19th____, 20 17____,

4. pertaining to the purchase and sale of the Property at ___5085_____Greenwood Circle_____

5. _____

6. Buyer assumes and agrees to pay according to the terms and conditions the following:

7. That certain mortgage in an approximate principal amount of                    $ _____

8. In favor of _____

9. with a current interest rate not to exceed _____ percent (%).

10. That certain contract(s) in an approximate principal amount of           $ _____895,000.00

11. with a current interest rate not to exceed _____ percent (%).

12. The total amount of the financing assumed is                               $ _____895,000.00

13. The exact unpaid balance of the mortgage(s) and/or contract(s) for deed will be determined as of the date of closing and
14. any difference between the actual mortgage(s) and/or contract(s) for deed amount and the amount stated in this
15. agreement shall be adjusted in CASH at closing so the total purchase price will remain the same. If at closing the
16. actual mortgage(s) and/or contract(s) for deed balance is less than 98% of the approximate amount of financing
17. stated in this Purchase Agreement, Buyer may, at Buyer's option, declare this Purchase Agreement cancelled by written
18. notice to Seller or licensee representing or assisting Seller, in which case this Purchase Agreement is cancelled. If
19. Buyer cancels the Purchase Agreement, Buyer and Seller shall immediately sign a *Cancellation of Purchase Agreement*
20. confirming said cancellation and directing all earnest money paid hereunder to be refunded to Buyer, less any costs
21. incurred as a result of the assumption application. However, Buyer may, at Buyer's option, proceed with this Purchase
22. Agreement regardless of the actual mortgage(s) and/or contract(s) for deed amount.

23. In the event the mortgage or vendor requires approval of Buyer as a condition for allowing the assumption, Buyer
24. agrees to make application for said assumption within five (5) Business Days of Final Acceptance Date of this Purchase
25. Agreement. If Buyer does not qualify for the assumption of the mortgage(s) and/or contract(s) for deed, or if the interest rate
26. is changed to a rate greater than the rate set forth herein, this Purchase Agreement is cancelled. Buyer and Seller
27. shall immediately sign a *Cancellation of Purchase Agreement* confirming said cancellation and directing all earnest
28. money paid hereunder to be refunded to Buyer, less any costs incurred as a result of the assumption application.

29. Buyer agrees to pay an assumption fee, if required, not to exceed $ _____

30. ☐ BUYER AGREES TO REIMBURSE SELLER ☐ SELLER AGREES TO TRANSFER TO BUYER any portion of
----------------------------*(Check one )*----------------------------
31. unused and reimbursed escrows at time of closing. Seller certifies escrow deposits will be current, as required
32. by lender, as of date of closing.

33. Seller warrants that the present financing is:
34. Type of Loan                                          Type of Interest Rate/Payment Schedule
35. *(Check all that apply.)*                             *(Check all that apply.)*
36. ☐ DVA                                                 ☐ FIXED RATE
37. ☐ FHA                                                 ☐ ADJUSTABLE RATE
38. ☐ CONVENTIONAL                                        ☐ GRADUATED PAYMENT
39. ☐ PURCHASE MONEY MORTGAGE(S)                          ☐ BALLOON
40. ☒ CONTRACT(S) FOR DEED                                ☐ OTHER _____
41. The present financing ☐ IS ☒ IS NOT negatively amortized.
----------------*(Check one )*----------------

MN:APA:AF-1 (8/13)

*Assignment of existing*

Instanet FORMS

ADDENDUM TO PURCHASE AGREEMENT:
ASSUMPTION FINANCING

42. Page _____ 2/2

43. Property located at __5085___Greenwood Circle_____

44. NOTE: On DVA assumption Seller's entitlement shall remain with the Property unless the assuming Buyer
45. is a veteran and is approved by DVA to substitute Buyer's entitlement or the loan is paid in full.

46. NOTE: On any mortgage assumption Seller shall remain liable for the mortgage obligation unless released
47. from liability by DVA, FHA and/or lender.

48. NOTE: For any FHA mortgage dated on or after December 1, 1986, or DVA mortgage dated on or after
49. March 1, 1988, check with mortgage lender(s) for assumption requirements.

50. OTHER: _____

51. _____

52. _____

53. _____

54. _____

55. _____

56. _____

57. _____

58. _____

59. _____ 2/28/17          _____ 02/28/2017
       (Seller)           (Date)           (Buyer)            (Date)

60. 5085GC, LLC  Manager               By: United International Trust N.V.
       (Seller)                             Managing Director      02/28/2017
                                           (Buyer)                 (Date)
                                        By: United International Trust N.V.
                                            Managing director

61.       THIS IS A LEGALLY BINDING CONTRACT BETWEEN BUYER(S) AND SELLER(S).
62.       IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

MN:APA:AF-2 (8/13)

Instanet FORMS

## ADDENDUM TO PURCHASE AGREEMENT

1. Date  February 28, 2017

2. Page  1/1

3.  Addendum to Purchase Agreement between parties, dated January 19th 2017 pertaining to the

4.  purchase and sale of the property at 5085 Greenwood Circle

5.  Greenwood, MN 55331,

6.  In the event of a conflict between this Addendum and any other provision of the Purchase

7.  Agreement, the language in this Addendum shall govern.

8.  Notwithstanding anything else to the contrary herein, Buyer is purchasing the property "as

9.  is" and relying solely on its own due diligence and acknowledges that Seller is making no

10.  representations or warranties of any kind.

11.           Seller      2/28/17 (date)         Buyer       February 28,201_ (date)

5085GC, LLC
Manager

**United International Trust N.V.**
Managing Director

12.        **THIS IS A LEGALLY BINDING CONTRACT BETWEEN BUYERS AND SELLERS**
**IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.**

### ADDENDUM TO PURCHASE AGREEMENT

This form approved by the Minnesota Association of REALTORS®,
which disclaims any liability arising out of use or misuse of this form.
© 2011 Minnesota Association of REALTORS®, Edina, MN

1. Date _____ 01/19/17 _____
2. Page _____

3. Addendum to Purchase Agreement between parties, dated __January__ __19th__ , 20 _17__ , pertaining to the
4. purchase and sale of the property at _5085  Greenwood  Cir_ _____
5. _____ Greenwood _____ MN _____ 55331 _____ .
6. In the event of a conflict between this Addendum and any other provision of the Purchase Agreement, the language
7. in this Addendum shall govern.

8. In the event the closing occurs after March 31,2018, Buyer shall pay
9. all Real Estate taxes due and payable after March 31 2018 and up to
10. the closing date.
11. If the closing date is March 31 2018 or before, buyer and seller
12. shall pay Real Estate taxes in accordance with lines 82-89 of the
13. purchase agreement.
14. In the event the closing occurs after March 31 2018 Buyer shall
15. reimburse property insurance paid by seller. This will be prorated
16. from March 31 2018 to the date of closing.
17. The sum total of all principal payments made by the seller in
18. accordance with the contract for deed included with the purchase
19. agreement, from the date of the signed purchase agreement to be
20. reimbursed to the seller with interest. Interest to be calculated in
21. accordance with the contract for deed rate.
22.
23.
24.
25.
26.
27.
28.
29.
30.

31. _____ 2/7/17 _____ _____ _____
    (Seller)                 (Date)                  (Buyer)                   (Date)
    5085GC, LLC, a MNLLC
32. _Duane Lund, its Manager_ _____ _____ _____
    (Seller)                 (Date)                  (Buyer)                   (Date)
33.           THIS IS A LEGALLY BINDING CONTRACT BETWEEN BUYERS AND SELLERS.
34.      IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

MN-APA (8/11)

USAProd-00010195

LEASE EXTENSION

It is agreed between the parties to extend that certain Lease Agreement dated January 28. 2016 between Rypl.com, Inc., Lessee, David V. Erickson, Resident and 5085GC, LLC, Owner and Lessor for the property located at:

     5085 Greenwood Circle
     Greenwood, MN 55331

It is agreed between the parties:

1. The Lease term shall be extended as follows:

   April 1, 2018 through March 31, 2019, or ninety (90) days post-filing of a final judgment and decree in the dissolution matter captioned, "In Re the Marriage of Chantel Marie Erickson and David Vincent Erickson", Court File No.: 27-FA-15-5489, Hennepin County District Court, State of Minnesota, whichever occurs first (the "Extended Term"); and

2. During the term of the existing lease and the Extended Term, Lessor or its agents, successors or assigns shall not list for sale or show the home to prospective tenants or buyers.

All other terms and conditions of the lease shall remain the same.

Owner/Lessor:

_____
5085GC, LLC a Minnesota limited liability company
By: Duane H. Lund, Chief Manager

Resident:


_____
David V. Erickson

Lessee:


_____
Rypl.com, Inc. and Ontario, Canada corporation
By: Chad Moldon, CEO

# Radon in Real Estate Transactions

**All Minnesota homes can have dangerous levels of radon gas.** Radon is a colorless, odorless and tasteless radioactive gas that can seep into homes from the soil. When inhaled, it can damage the lungs. Long-term exposure to radon can lead to **lung cancer.** About 21,000 lung cancer deaths each year in the United States are caused by radon.

The only way to know how much radon gas has entered the home is to conduct a radon test. MDH estimates 2 in 5 homes exceed the 4.0 pCi/L action level. Whether a home is old or new, **any home can have high levels of radon.**

The purpose of this publication is to educate and inform potential home buyers of the risks of radon exposure, and how to test for and reduce radon as part of real estate transactions.

## Disclosure Requirements



Effective January 1, 2014, the Minnesota Radon Awareness Act requires specific disclosure and education be provided to potential home buyers during residential real estate transactions in Minnesota. **Before signing a purchase agreement to sell or transfer residential real property, the** seller shall provide this publication and shall disclose in writing to the buyer:

1. whether a radon test or tests have occurred on the property;
2. the most current records and reports pertaining to radon concentrations within the dwelling;
3. a description of any radon levels, mitigation, or remediation;
4. information on the radon mitigation system, if a system was installed; and
5. a radon warning statement.


**Minnesota Department** *of* **Health**

**INDOOR AIR UNIT**

## Radon Facts

**How dangerous is radon?** Radon is the number one cause of lung cancer in non-smokers, and the second leading cause overall. Your risk for lung cancer increases with higher levels of radon, prolonged exposure, and whether or not you are a current smoker or former smoker.

**Where is your greatest exposure to radon?** For most Minnesotans, your greatest exposure is at home where radon can concentrate indoors.

**What is the recommended action based on my results?** If the average radon in the home is at or above 4.0 pCi/L, the home's radon level should be reduced. Also, consider mitigating if radon levels are between 2.0 pCi/L and 3.9 pCi/L. Any amount of radon, even below the recommended action level, carries some risk.



MDH Radon Program
PO Box 64975
St Paul, MN 55164-0975
health.indoor@state.mn.us
www.health.state.mn.us/radon
651-201-4601
800-798-9050

InstanetFORMS

## Radon Testing

Any test lasting less than three months requires **closed-house conditions.** Keep all windows and doors closed, except for normal entry and exit.

**Before testing:** Begin closed-house conditions at least 12 hours before the start of the radon test.

**During testing:** Maintain closed-house conditions during the entire duration of the short-term test. Operate home heating or cooling systems normally during the test. Test for at least 48 hours.

**Where should the test be conducted?** Any radon test conducted for a real estate transaction needs to be placed in the lowest livable area of the home suitable for occupancy. This is typically in the basement, whether finished or unfinished.

Place the test kit:

* twenty inches to six feet above the floor
* at least three feet from exterior walls
* four inches away from other objects
* in a location where it won't be disturbed
* not in enclosed areas or areas of high heat or humidity

**How are radon tests conducted in real estate transactions?** There are special protocols for radon testing. The two most common ways to test are either using a calibrated continuous radon monitor (CRM) or two-short term test kits used at the same time. The short-term test kits are placed 4 inches apart and the results are averaged.



*Fastest*                    *Second Fastest*



**All radon tests should be conducted by a certified professional.** This ensures the test was conducted properly, in the correct location, and under appropriate building conditions. A list of these radon measurement professionals can be found at MDH's Radon website. If the seller previously conducted testing in a property at or above 4 pCi/L, the home should be mitigated.

## Radon Mitigation

When elevated levels of radon are found, they can be easily reduced by a certified radon mitigation professional.

**Radon mitigation is the process used to reduce radon concentrations in buildings.** This is done by drawing soil gas from under the house and venting it above the roof. A quality mitigation system should reduce levels to below 4.0 pCi/L, if not lower.

**After a radon mitigation system is installed** perform an independent short-term test to ensure the reduction system is effective. Operate the radon system during the entire test. This test will confirm low levels in the home. Be sure to retest the house every two years to confirm continued radon reduction.

## Radon Warning Statement

*"The Minnesota Department of Health strongly recommends that ALL homebuyers have an indoor radon test performed prior to purchase or taking occupancy, and recommends having the radon levels mitigated if elevated radon concentrations are found. Elevated radon concentrations can easily be reduced by a qualified, certified, or licensed, if applicable, radon mitigator.*

*Every buyer of any interest in residential real property is notified that the property may present exposure to dangerous levels of indoor radon gas that may place the occupants at risk of developing radon-induced lung cancer. Radon, a Class A human carcinogen, is the leading cause of lung cancer in nonsmokers and the second leading cause overall. The seller of any interest in residential real property is required to provide the buyer with any information on radon test results of the dwelling".*

Instanet*FORMS*

USAProd-00010198

**5085CG, LLL**
**Incoming Wire Transfer**

**Wire to:**

Equity Bank
5900 Green Oak Drive, Suite 100
Minnetonka, MN 55343
952-939-7200

ABA Routing: 091916255

**Beneficiary Information:**

5085GC, LLC
C/O Exchange Realty Inc
14525 Highway 7
Suite 305
Minnetonka, MN 55345
952-217-5372

Account Number: ████5629

---

DEPOSIT TICKET

**5085GC, LLC**
DUANE LUND
33 SOUTH SIXTH STREET
SUITE 4135
MINNEAPOLIS, MN 55402

DATE _____
DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL

SIGN HERE FOR CASH RECEIVED (IF REQUIRED) ✱

**EQUITY BANK**
www.equitybankmn.com

|  | ✓ | CASH ▶ |
| --- | --- | --- |
| 75-1625/919 | | |
| | | ▶ |
| | | ▶ |
| TOTAL FROM OTHER SIDE ▶ | | |
| SUB TOTAL ▶ | | |
| ✱ LESS CASH RECEIVED ▶ | | |
| **$** | | |

⑆091916255⑆  015135 629⑈  600